[L. A. No. 5711. In Bank.—March 14, 1921.]

## THOMAS HAVERTY COMPANY (a Corporation), Respondent, v. G. M. JONES, Appellant.

[1] BUILDING CONTRACTS — SUBSTANTIAL PERFORMANCE.— Where the owner has taken possession of and is using a building, if there has been a substantial performance thereof by the contractor in good faith, and the failure to make full performance can be compensated in damages, and the omissions or deviations were not willful or fraudulent, and do not substantially affect the usefulness of the building for the purposes for which it was intended, the contractor may recover the amount unpaid of his contract price, less the amount allowed as damages.

[2] ID.—CONSTRUCTION OF PLUMBING, HEATING, AND VENTILATION PLANT—TRIVIAL OMISSIONS — SUBSTANTIAL PERFORMANCE.—Where the contract price for the construction of the plumbing, steam-heating, and a ventilation plant in a building was $27,332.66 and the cost of the building about $186,000, omissions which could be remedied at a cost of $99.21 were trivial, and the contractor could recover the balance due on the contract price less such amount.

[3] ID.—CHANGES AND SUBSTITUTIONS IN CONTRACT — REDUCTION IN VALUE OF BUILDING—SUBSTANTIAL PERFORMANCE.—Where the contract price for the construction of the plumbing, steam-heating, and a ventilation plant in a building was $27,332.66 and the actual cost of the building about $186,000, departures from the contract which reduced the value of the building by the amount of $2,180.88 do not prevent the contractor from recovering the balance of the contract price, where the changes made in the work do not affect the usefulness thereof.

---

1. General rule as to recovery upon substantial performance of a building contract, note, 24 L. R. A. (N. S.) 332.

[4] Id.—Wrongful Acts of Employees of Contractor—Damage to Work of Subcontractors — Substantial Performance Unaffected—Trespass.—If employees of a contractor whose contract embraced only a part of the work upon a building, without his orders, damage the work done by other contractors in the construction of other parts of the building, it is a mere trespass, and has no bearing on the question of the substantial performance of his contract by the contractor first above mentioned.

[5] Id.—Effect of Cutting of Cantilevers — Question of Fact—Evidence.—The question whether or not cantilevers composing part of the foundation supports of a building, which had been partially cut by employees of the plumbing contractor in the course of their work, would when repaired support and sustain additional stories which the owner intended at some future time to erect, was a question of fact, and not of law, and to be determined from the evidence, and not solely from the opinion of the owner, his engineers and architect.

[6] Id.—Discharge of Architects—Employment of New Architect—Absence of Agreement for Substitution — Certificate Unnecessary to Recovery.—Where a contract for construction required performance to the satisfaction of two named architects, who had been discharged and another architect employed, without any agreement with the contractor for his substitution, the architect's certificate of acceptance was not required, and performance to the satisfaction of such architect was not a condition of the contractor's right of recovery.

[7] Id.—Performance to Satisfaction of Owner—Satisfaction of Reasonable Person.—Performance of a contract for the construction of a plumbing, heating, and ventilation contract to the satisfaction of the owner is complied with by performance which is satisfactory to a reasonable person.

[8] Id.—Action for Recovery of Balance of Contract Price—Evidence—Performance of Work—Testimony of Plaintiff's Employees—General Question.—In an action to recover the balance due upon a contract for the construction of a building, the admission of testimony of plaintiff's employees that the work had been performed in accordance with the specifications, in answer to a general question, was harmless where ample opportunity for cross-examination was given and the whole matter was gone into at great length during the trial.

[9] Id.—Keeping of Records of Installation—Furnishing of Drawings — Waiver of Strict Compliance.—Where a contract for building construction required the contractor to keep complete records of his installation and show by drawings every important detail of the system, but the owner never expressed dissatisfaction

with the inaccurate drawings furnished, or demanded any addi-
tional or different report or statement, strict performance of the
provision was waived.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying motion to set
aside and enter different judgment on findings. John W.
Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Meserve & Meserve for Appellant.

J. H. Shankland, Sheldon Borden and George H. Moore
for Respondent.

SHAW, J.—The defendant appeals from the judgment
and also from an order made after judgment denying his
motion to set aside the judgment and render a judgment in
his favor on the findings.

The complaint states a cause of action to recover the bal-
ance alleged to be due from defendant to plaintiff upon a
contract for the construction of the plumbing, steam-heat-
ing, and ventilation plant in a four-story building erected
by the defendant. The answer admitted the making of the
contract, but denied that the same had been fully performed
by the plaintiff, and also alleged that the performance was
defective in many particulars, whereby he was damaged in
a large sum of money, exceeding the amount claimed by the
plaintiff, and also that certain damages had been caused to
the building by the carelessness of the plaintiff in doing the
work called for by the contract, whereby he was also dam-
aged. He asked judgment for the amount of damages
claimed in his answer. The same matters were also set up
in a separate pleading designated as a cross-complaint.

The court found that the plaintiff had performed the
work called for by the contract, except in certain particulars
set forth at length in the findings, concerning which the
court found that the specifications included in the contract
were not directly followed. As to nine of these particulars
the court found that the omissions could be remedied at a
cost amounting in all to $99.21. With respect to certain
other defects, the court found that they could not be rem-

edied without a greater expense than their importance would justify, but that the resulting damage to the building amounted to only $2,180.88. With respect to these failures to fully perform the contract the court further found that they were not done willfully or fraudulently, but that the same were due to mistakes and misinterpretations of the contract by the plaintiff's employees, or because the deviations from the specifications were believed to be necessary for the proper construction of the work and beneficial to the defendant; that there was a substantial performance of the contract, and that the difference in value to the defendant by the failure in full performance and the damages caused thereby could be compensated by a deduction from the contract price. It also found that in the course of construction certain workmen of the plaintiff, without its orders, partially cut through some cantilevers in the basement of the building, and that the same could be repaired at an expense of $650.78. The balance due to the plaintiff upon the contract price, including the charges for extras furnished in pursuance of a provision of the contract, after deducting certain omissions which were agreed to, certain labor performed by the defendant himself, and the payments made by him before the beginning of the action, amounted to $10,775.64. From this sum the court deducted the sum allowed for the remediable defects, as aforesaid, the damages amounting to $2,180.88 arising from the irremediable defects, and $650.78, allowed for the cost of repairing the cantilevers, amounting in all to $2,930.87, leaving a balance of $7,844.77, for which sum judgment was rendered in favor of the plaintiff.

The principal point presented in the case is the question of the right of a building contractor to recover the contract price where he has not completely performed the contract. The law in this state on this subject has been considered in several recent decisions and is now comparatively well established.

The general rule on the subject of performance is that "Where a person agrees to do a thing for another for a specified sum of money to be paid on full performance, he is not entitled to any part of the sum until he has himself done the thing he agreed to do, unless full performance has been excused, prevented or delayed by the act of the

other party, or by operation of law, or by the act of God or the public enemy.'' (*Carlson* v. *Sheehan,* 157 Cal. 696, [109 Pac. 30].) This, of course, refers to actions upon the contract for the contract price. The right to sue on an implied contract for the value of a partial performance is a different question and is not here involved. The rule just stated is that prevailing at common law. [1] It has now been greatly relaxed and it is settled, especially in the case of building contracts where the owner has taken possession of the building and is enjoying the fruits of the contractor's work in the performance of the contract, that if there has been a substantial performance thereof by the contractor in good faith, where the failure to make full performance can be compensated in damages to be deducted from the price or allowed as a counterclaim, and the omissions and deviations were not willful or fraudulent and do not substantially affect the usefulness of the building for the purposes for which it was intended, the contractor may, in an action upon the contract, recover the amount unpaid of his contract price, less the amount allowed as damages for the failure in strict performance. (9 Corpus Juris, 739; 2 Elliott on Contracts, sec. 1607; 6 R. C. L. 967, 970; 1 Beach on Contracts, secs. 111, 112; 3 Page on Contracts, secs. 1385, 1387; *Connell* v. *Higgins,* 170 Cal. 556, [150 Pac. 769]; *Jones etc. Co.* v. *Doble Co.,* 162 Cal. 505, [123 Pac. 290]; *Smith* v. *Mathews etc. Co.,* 179 Cal. 801, [179 Pac. 205]; *Rischard* v. *Miller,* 182 Cal. 351, [188 Pac. 50]; *Collins* v. *Ramish,* 182 Cal. 359, [188 Pac. 552]; *City Street Improvement Co.* v. *Kroh,* 158 Cal. 325, [110 Pac. 933]; *Perry* v. *Quackenbush,* 105 Cal. 308, [38 Pac. 740]; *Harlan* v. *Stufflebeem,* 87 Cal. 511, [25 Pac. 686].)

In 9 Corpus Juris, 739, the rule is summarized as follows: ''The hardship of the rule requiring strict performance in order to permit recovery on a contract generally, when applied to a builder who has undesignedly violated his contract, and the inequitable advantage that it gives to an owner who receives and retains the benefit of the builder's labor and materials have led to its qualification; and it is generally held that, where the compensation is due only on the performance of the contract, a literal and strict performance is not required, and if the builder, acting in good faith and intending and attempting to perform his contract, does so,

CLXXXV Cal.—19

he may recover the contract price notwithstanding slight and trivial defects or deviations in performance, for which compensation may be made, in all its material and substantial particulars, by an allowance to the owner; but the owner is entitled to an allowance for the damages he may suffer by reason of the failure to perform strictly, such as the cost or expense of putting the structure or work in the condition called for by the contract.'' Many cases supporting the several statements in the text are cited in the footnotes. One of the clearest statements of the law on the subject is found in *Handy* v. *Bliss,* 204 Mass. 518, [134 Am. St. Rep. 673, 90 N. E. 864], where the court said: ''There must be such an approximation to complete performance that the owner obtains substantially what was called for by the contract, although it may not be the same in every particular, and although there may be omissions and imperfections on account of which there should be a deduction from the contract price. It is not necessary that the work should be complete in all material respects, nor that there should be no omissions of work that cannot be done by the owner except at great expense or with great risk to the building. There may be omissions of that which could not afterward be supplied exactly as called for by the contract without taking down the building to its foundations, and at the same time the omission may not affect the value of the building for use or otherwise, except so slightly as to be hardly appreciable. Notwithstanding such omission, there might be a substantial performance of the contract. . . . An intentional omission to do certain things called for by the contract, if he believes that they are not called for, and intends in good faith to do all that he has agreed to do, does not prevent the application of the doctrine.''

It is worthy of remark that this relaxation of the rigid rule of the common law is, after all, little more than a change from form to substance in the administration of justice. At common law, where a person failed to strictly perform a building contract, if the work actually done benefited the owner and to some extent served his purpose, the contractor could recover the reasonable value of the work done, in an action in *quantum meruit,* and the owner could recoup the damage he had sustained from the breach of the contract to fully perform. But if the contractor, believing he

had fully performed, sued on the contract for the agreed price, the action, under the rigid rules as to forms of action, would be defeated upon a showing by the owner that there had been a failure to perform the contract in the least material particular. Forms of action are now abolished and one of the main reasons for adherence to the rigid rule of the common law is thereby removed. Since the contractor would in justice be entitled to recover the reasonable value of the work done, not exceeding the contract price, no good reason now appears why in a suit upon the contract for the price he should not be allowed to recover the price, less the reasonable compensation to the owner for any damages arising from a failure to completely perform, provided the contractor has acted in good faith and the article or building is so far completed that it reasonably serves the purpose for which it was intended by the owner. Substantial justice is provided by this course of procedure and no real property right is violated.

The question what constitutes substantial performance is one of some difficulty. In *Connell* v. *Higgins, supra,* it was said that the question is usually ''to be determined in each case with reference to the existing facts and circumstances.'' In 9 Corpus Juris, 741, it is said that there is a substantial performance where the variance from the specifications of the contract does not impair the building or structure as a whole, and where after it is erected the building is actually used for the intended purpose, or where the defects can be remedied without great expenditure and without material damage to other parts of the structure, but that the defects must not run through the whole work so that the object of the owner in having the work done in a particular way is not accomplished, or be such that a new contract is not substituted for the original one, nor be so substantial as not to be capable of a remedy and the allowance out of the contract price will not give the owner essentially what he contracted for.

[2] According to the testimony of the defendant, the actual cost of the building, including the Haverty contract, was about one hundred and eighty-six thousand dollars. The contract price of the work to be done by the plaintiff under the contract sued on, including the extras, was $27,332.66. The sum of $99.21 deducted as the cost of

remedying the curable defects was, of course, a trivial matter. In *Rischard* v. *Miller, supra,* the defects could be removed or compensated at the total cost of $99.50 in the building of a house costing two thousand six hundred dollars, and we there held that the performance was substantial and that the contractor could recover the balance due on the contract price, less the $99.50. So far as this point is concerned, that case fully answers the objections of the defendant.

[3] The sum of $2,180.88 allowed as damages on account of defects which could not be removed or remedied seemed at first blush to be rather large to come within the rule as to substantial performance. It was because of our desire to further consider this point that a rehearing of the case was granted after decision of the district court of appeal affirming the judgment.

The finding as to damages from these defects is that they reduced the value of the building by the amount of $2,180.88. As compared to a building costing $27,332, a reduction in value of $2,180.88 by departures from the contract might appear to be substantial, although we would not say, in view of the above authorities, that it would of necessity prevent a recovery of the contract price less the damages. But when the reduction is only $2,180.88 in the value of a building costing one hundred and eighty-six thousand dollars it does not seem so large in comparison. Upon a consideration of the details of the respective failures in performance we find them to be really of trifling character compared to the cost of the building. The character and effect of the departures from the contract, as shown by the detailed findings, scarcely sustain the general finding as to the reduction in the value of the building caused thereby. Certainly the court gave the defendant the benefit of every doubt on the subject.

There were twelve so-called "irremediable defects," to wit: 1. The substitution of wrought iron screw fittings to waste and drain pipes instead of cast iron fittings known as "Durham couplings." 2. The substitution of galvanized steel pipe for extra heavy cast iron pipe in certain sewer connections. 3. The failure to cover with asbestos paper the hot-water pipes extending through parts of the second and third stories, which failure was in part due to the fact that

the defendant inclosed the walls before the covering was put on. The defendant erected the other parts of the building. 4. The substitution of galvanized iron sleeves where pipes passed through walls and floors instead of so-called Crane telescoping sleeves, the latter being unsuitable for such a building. 5. The failure to install 597 feet of radiation out of 3,502 square feet required by the specifications. This omission was due in part to the fact that part of the specified radiation was omitted by order of the defendant. 6. The failure to install air chambers at the top ends of service pipes for hot and cold water in the attic. 7. The installation of cut-out valves on the hot-water pipes in the attic, instead of installing them near to the ceiling of the top floor. 8. The use of short bends instead of long turn bends in the three-inch cold-water main supply pipe at several places in the basement and attic and at one place between the basement and attic. 9. The use of supply pipes in the attic for a portion of the distance required to be run, which were smaller than the sizes specified. 10. The substitution of three-fourths inch pipe, instead of one-inch pipe, in fifteen out of thirty-one of the cold-water pipes extending through the third and fourth floors. 11. The substitution of three-fourths inch pipe for one-inch pipe in eleven out of thirty-one of the hot-water pipes extending through the third and fourth floors. 12. The substitution of No. 8 steel for No. 10 steel in the breeching of the boiler.

With respect to the defects numbered 1, 2, 4, 6, 7, 8, 9, 10, 11, and 12 the court found that the material and construction substituted for that specified was equally as efficient and durable when so placed as that which was specified would have been. As to the failure to cover the hot-water pipes with asbestos paper (No. 3), the court found that it was not true that it would or did result in serious damage or injury to the building. With respect to the failure to install the whole of the radiation (No. 5), the court found that the radiation as constructed is amply sufficient for the purpose intended. With respect to the substitution of smaller for larger sizes of cold-water and hot-water pipes (Nos. 10 and 11), the court further found that the smaller sizes are sufficient to amply supply with water the fixtures connecting therewith.

It further appears from the evidence that the difference between the actual cost of the articles substituted and the actual cost of those specified in the several defects classed as irremediable amounted to only $196.32. Of this difference $137.31 is due to the cost of the 597 square feet of radiation omitted by the plaintiff. Some of this, but how much does not appear, was omitted by direction of the defendant. This leaves $59.01 as the difference on account of the other items. The evidence also shows that the plaintiff in many things substituted better and costlier material in place of the material specified, and that this additional cost was greater than the reduction in cost by the substitutions of less expensive material. It also appears that in some instances it was difficult, and in other instances impossible, to obtain materials of the exact character prescribed in the specifications, and that the plaintiff obtained such material as could be had, sometimes at greater and sometimes at less expense than adherence to the specifications would have required.

In summing up the case finding X states that the changes and substitutions made by plaintiff in the systems of plumbing, heating, and ventilation it constructed in performing the contract "do not virtually affect the usefulness of said systems," nor "impair the efficiency, serviceability or durability thereof," that they have performed, are performing, and are adequate to perform all the purposes intended, "to the same extent as if there had been no departures from the contract"; "that the same are useful and beneficial to said building and to the defendant and that he has taken possession of the same and has voluntarily accepted the benefit thereof," and that ever since the completion of the building he has used and is now using it for the purposes for which it was intended.

All the findings are supported by substantial evidence. We cannot consider the opposing evidence. It merely created a conflict. The court's final conclusion was that the imperfections due to plaintiff's failure to perform the contract in strict accordance with its terms are trivial and of a minor character as compared with the extent and magnitude of the entire work embraced in said contract, and that the damages occasioned thereby can be recouped by the defendant in this action. We agree with this conclusion, and

we are of the opinion that the case comes within the established doctrine under which a contractor may recover in a suit for the contract price, upon showing substantial, though not in all respects complete, performance.

[4] The item of $650.87, deducted from the price on account of the injury by the plaintiff's employees to the cantilevers composing part of the foundation supports of the building, has no bearing on the question of substantial performance. It was no part of the work of construction required by the contract, but was a mere trespass by the employees of the plaintiff, committed in the course of their work. The court found that it did not destroy the use or value of the cantilevers, and that the damage to the defendant therefrom did not exceed said sum of $650.78. [5] The court found that this sum would be the reasonable cost of repairing them, and that when so repaired they would fully serve the purpose for which they were designed, and would support and sustain the three additional stories which the defendant intends at some future time to erect on the building. The defendant claims that these findings are not in accordance with the evidence. On this point, however, there was a sharp conflict in the evidence and we cannot disturb the findings thereon. The question whether or not the cantilevers when repaired would support the additional stories was a question of fact, not of law, and it was to be determined from the evidence and not, as defendant claims, solely from the opinion of himself and his engineers and architect. This part of the findings and judgment must, therefore, be upheld.

[6] The appellant claims that the plaintiff was not entitled to a judgment because it does not appear that the contract was performed "to the satisfaction of the defendant" nor "to the satisfaction and acceptance of the architect," nor that it had obtained the architect's certificate of acceptance. The court upon this subject found that the contract was not performed to the satisfaction of the defendant, but that it was "performed in such a manner as should be satisfactory to a reasonable person." The contract stated that two persons, named MacGibbon and Frary, were the architects for the building, and with respect to many of the matters required thereby it stated that the performance should be to the satisfaction of said architects. The court found, however, and the evidence is sufficient to

sustain the finding, that in the course of the work Mac-
Gibbon and Frary were discharged as architects and that no
person was substituted in their place. One C. H. Russell
was employed by the defendant as advising architect, but
there was no agreement between defendant and plaintiff
that he should be substituted for MacGibbon and Frary.
The result was that after the discharge of the architects
named the architect's certificate was no longer required nor
was performance to the satisfaction of the architects a tech-
nical condition of the right of the plaintiff to recover.
[7] The finding of the court that the contract was per-
formed in such a manner as should be satisfactory to a
reasonable person is sufficient to entitle the plaintiff to re-
cover in the action, so far as that point is concerned. As
was stated by the district court of appeal, "A stipulation in
the contract to perform to the satisfaction of one of the
parties only calls for such performance as should be satis-
factory to a reasonable person." (*Gladding, McBean &
Co.* v. *Montgomery,* 20 Cal. App. 276, [128 Pac. 790];
*Bryan etc. Co.* v. *Law,* 31 Cal. App. 204, [160 Pac 170];
*Bruner* v. *Hegyi,* 42 Cal. App. 97, [183 Pac. 369].) This
rule does not apply where the performance involves matters
dependent on fancy, taste, sensibility, or judgment of the
other party, but it does apply where the question is merely
one of operative fitness or mechanical utility, and especially
to contracts for the erection of buildings. (*Tiffany* v. *Pa-
cific Sewer Pipe Co.,* 180 Cal. 702, [6 A. L. R. 1493, 182
Pac. 428].)

We do not think the findings sustain the contention of the
defendant that the court measured the damages by the
difference in the service value of the building rather than
by the difference in the market value thereof. For the
defects classed as remediable the damage was measured by
the reasonable cost of correction thereof. For the other de-
fects, it is plain that the damages allowed did not consist
of the difference in cost, but were measured by the differ-
ence between the value of the building with those im-
perfections and its value without such imperfections. This
contention, therefore, is not sustained by the record.

[8] In proving its case the plaintiff was allowed to
introduce its employees in charge of the work to testify that,
in answer to a general question, the work had been per-

formed in accordance with the specifications. It is earnestly contended that in this the court erred; that the plaintiff should have been required to prove exact performance of each and every item concerning which there was a contest. We do not find it necessary to decide whether this is technically correct or not, although there are many reasons for allowing such *prima facie* proof of performance to be made. The record shows that no harm ensued to the defendant from this ruling. Ample opportunity was given to cross-examine these witnesses · and the whole matter was gone into at great length during the trial.

[9] The contract provided that the contractor should keep careful and complete records of his installation of the systems provided for and show by drawings "every important detail of the system," and that this record should be delivered to the owner before final acceptance. It is claimed that this condition was not complied with. Drawings were furnished to the defendant in attempted compliance with this provision, but they were, in certain unimportant particulars, inaccurate. The court found that no damage was sustained by reason thereof. The evidence shows that the defendant never expressed any dissatisfaction therewith or demanded any different or additional report or statement. We think strict performance of this provision was waived.

In conclusion we quote the following from the decision of the district court of appeal: "Upon other issues, covering the many details about which appellant has made exceptions and has presented exhaustive arguments, a separate statement and decision on each point would require far more space than even a generous indulgence should allow. Counsel will, we trust, content themselves with the assurance that these questions have had the attention of the court. Having reached the conclusions which have been announced upon the principal issues of the case, we need only say in addition that the evidence was fully and fairly received and considered by the trial court, that the judgment expresses a correct conclusion upon the facts found, and that the evidence is sufficient to justify those findings upon the material issues necessary to support the judgment."

The judgment and order are affirmed.

Olney, J., Wilbur, J., Lennon, J., Sloane, J., and Lawlor, J., concurred.