[Civ. No. 3712.   Fourth Dist.   Apr. 21, 1948.]

INNES FOOD EQUIPMENT COMPANY (a Corporation), Respondent, v. SANGUINETTI FRUIT COMPANY et al., Appellants.

Calvin H. Conron, Jr., for Appellants.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Bennett Siemon for Respondent.

GRIFFIN, J.—This is an appeal by defendants from a judgment in favor of plaintiff foreclosing a lien for labor and materials on certain real property leased to defendants Franklin D. Rakow and Sanguinetti Fruit Company by the defendant Southern Pacific Railroad Company, a corporation. Plaintiff was engaged in the business of developing and making equipment for harvesting potatoes. On November 7, 1945, plaintiff wrote Rakow a letter reading in part as follows:

"This letter is written to set out the agreement we have had in our discussions during the past weeks, in concise form.

"This Company is to install in your building at Edison, Calif. equipment to handle potatoes in bulk the same being a reinforced concrete tank, holding 28,000 to 30,000 pounds of potatoes. And a suitable conveyor to convey the potatoes from the bottom of the tank to your sorting and grading means and a pump to pump the muddy water from a sump in or by the bottom of the tank and proper pipes to convey the muddy water away from the pump.

"The cost of this equipment will be the cost of necessary material, the labor and our regular overhead constant but not addition for profit.

"Next June 15th, *if this installation works properly* you to repay this Company the cost of the installation less 10% . . .

"If this proposal is agreeable to your recollection of our discussions will you kindly acknowledge its receipt as a memorandum for our files." (Italics ours.)

On November 10, 1945, plaintiff received a reply as follows:

"This is to acknowledge receipt of your letter written Nov. 7, 1945, in which you set forth certain agreements with regard to installing a concrete tank, mud pump and conveyor for handling bulk potatoes.

"The terms set forth in this letter are agreeable to me and I so accept them.

"With the sincerest hope that it all operates perfectly and efficiently."

This constitutes the extent of the written agreement between the parties. The main question presented is whether there is sufficient evidence to justify the finding of the court that plaintiff's performance of its part of the contract satisfied

the conditions in that writing which provided for payment *"if this installation works properly."*

Mr. Innes, president of plaintiff corporation, testified that prior to sending these letters he and defendant Rakow went to Pixley to see a Siemens Washer in operation which was a similar potato washer but operating only with one tank. Rakow stated that he needed one double that capacity and instructed the plaintiff to prepare plans and specifications for such a double washer. Plaintiff submitted plans and a model similar to the Siemens Washer which provided for a floor in a sunken pit with a 45 degree angle slope. He testified that Rakow insisted upon the double tank washer even after he pointed out to him that if it were so constructed the slope of the floor would then only be 23 degrees and would not be great enough to provide for a free flow of the potatoes; that acting upon Rakow's instructions plaintiff then caused other specifications to be drawn and another model made of the washer, as finally built. Rakow testified that he knew the proposed slope was only 23 degrees and that he made no objections thereto. The washer was then constructed according to plans, and while partially completed, it was tested by processing an 85 carload crop of potatoes belonging to one Neff. Thereafter, according to plaintiff's evidence, the washer, after making certain changes and adjustments, was turned over to Rakow on April 29, 1946, and he was billed for the labor and material furnished in accordance with the contract.

There was evidence that Rakow was present during a great deal of the time the washer was being constructed and that he approved certain items going into its construction and was present when it was tested with the Neff potatoes and helped Neff operate the pit at that time.

Rakow used the washer between April 29th and May 23d, and his entire crop of 67,000 sacks of his potatoes was processed through this washer. Demand was made by plaintiff for payment of the agreed price on June 15, 1946, but defendants refused. Innes testified that Rakow did not complain about the operation of the washer until he asked him for payment. However, Rakow testified that he made continuous complaints about its operation. The evidence relied upon by defendants is sharply in conflict with the testimony related by plaintiff.

Rakow testified that in 1945 the matter of construction, by plaintiff, of an experimental bulk potato washer in the Edison area was generally discussed between plaintiff's president, Rakow, and other interested growers and that such a washer

was to be constructed by plaintiff at this particular shed and that Rakow was to pay for it only if it should prove satisfactory; that he agreed to this arrangement provided it would be of a double tank type so he could wash his own potatoes in one tank and those of customers in the other; that plaintiff prepared the plans and model which he approved, having confidence in plaintiff; that they all believed that a floor slope of 23 degrees would work properly; that they then wrote the letters referred to; that to make room for the new washer Rakow removed one of his sack method washers and thereafter plaintiff constructed the new washer; that in February, 1946, plaintiff tested it; that between April 29th and May 23d, 1946, he used it and the entire unit failed to work in a satisfactory manner; that the slope of the floor was such that the potatoes failed to slide down it to the conveyor and had to be pushed down manually; that the equipment broke down at least once a week; that the pump continually froze up and broke down; that the entire equipment had various other specified faults; that he had to suspend further washing by this method and went back to the hand method formerly pursued by him at less expense; that he continually advised plaintiff that the machine was not working properly and that plaintiff made further changes in it even after May 23, 1946, and after he finished using it; that about June 1st, 1946, plaintiff asked him to pay $2,000 for the use of the washer in lieu of the contract price; that defendant refused and plaintiff billed him for the contract price of $7,102.79. A lien was then filed.

On this evidence the trial court found generally in favor of plaintiff and against the defendants' contention and specifically found that the washer was completed and accepted by Rakow on April 29th, 1946; that the washer worked properly and was without structural defect except for the slope of the floor, which was insufficient to cause all of the potatoes to flow and required that some of each washing be manually moved into the pit and that plaintiff and defendant Rakow were equally responsible for any such defect; that defendant Rakow waived any structural defect in such improvement by acceptance and use of the same. Judgment was entered accordingly.

Defendants appealed and argue that the writing between the parties clearly indicates that the washer "should perform in a manner satisfactory to Rakow" before he was obligated to pay for it, citing 46 American Jurisprudence, page 658, section 495, and the rule set forth in *Thomas Haverty Co.* v.

*Jones,* 185 Cal. 285, 296 [197 P. 105], that "A stipulation in the contract to perform to the satisfaction of one of the parties only calls for such performance as should be satisfactory to a reasonable person," and that since Rakow acted as a reasonable person in rejecting the washer and since there was no evidence that he thus acted in bad faith, the evidence does not support the finding and judgment of the court; that since the court found that the slope of the floor of the washer was insufficient to cause all of the potatoes to flow and required that some of each washing be manually moved into the pit, such a finding was, in fact, a finding that the washer was in fact defective from a standpoint of operative fitness and therefore Rakow's dissatisfaction was reasonable, citing *Fruit Growers Supply Co.* v. *Goss,* 4 Cal.App.2d 651 [41 P.2d 357]; that if plaintiff believed that the floor slope was too flat, as designed, and nevertheless built it in such manner, even with the knowledge of Rakow, the plaintiff, by reason thereof, assumed all the risks involved as to whether or not the washer would perform properly.

The written agreement does not provide, as suggested by defendants, that the washer must work "satisfactory to defendant Rakow" before he was obligated to pay for it, but only provides that "Next June 15th if this installation works properly," he must pay. There is a great deal of distinction between this contract and a contract to be performed to the satisfaction of one of the parties. The words "works properly" should be taken in their common usage and understanding. This does not mean that it would have to perform to the satisfaction of Rakow but, considering all of the factors involved, that it would have to perform as well as a reasonable person would expect under the circumstances. The installation admittedly was of an experimental nature and the parties naturally could not expect the same degree of performance as they could have expected from a standard machine that had been widely used and tested. Plaintiff's evidence shows that instead of rejecting the washer, Rakow in fact retained it after an experiment with the Neff potato crop, and in fact used it to wash and clean his entire crop. Innes endeavored to account for the claimed temporary mechanical failures, denied the facts generally related by Rakow, and then testified that as to the plans and specifications "every item that we designed to put in got his approval" first; that the double pit, with the resulting 23 degree slope, was built on the insistence of Rakow and against the advice of plaintiffs; that in

his estimation, when the washer was turned over to Rakow on June 15th it operated in a proper manner and was adequate. The fact that some of the potatoes had to be manually forced into the pit did not necessarily defeat its utility. Defendants' entire crop of potatoes was processed through the washer. There was no evidence to the effect that the washer did not handle the potatoes as fast as they were harvested and it must be assumed that the potatoes were washed at least as expediently and as well as by the old method. The handling of a crop of potatoes of this size was probably more than a one-man operation and it cannot be assumed that the hiring of one additional man to manually force the potatoes into the pit would defeat the purpose and objective of the washer. The contract does not necessarily require that the cost of operation, compared to the old method, be lowered. Potatoes are a perishable crop and the market fluctuates from day to day. It is entirely possible that potatoes could be processed faster through the bulk method than the old method and that a somewhat higher cost would not necessarily mean less profit.

The real question, therefore, is whether the evidence justifies the finding of the court that plaintiff's performance of its part of the contract satisfied the conditions set forth in the agreement. Since all conflicts in the evidence must be resolved in favor of such finding (*Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301]), it appears to us that there is sufficient evidence to support such a finding and the judgment. (*Jackson* v. *Porter Land & Water Co.*, 151 Cal. 32 [90 P. 122]; *Burrell* v. *Southern California Can Co.*, 35 Cal. App. 162 [169 P. 405]; 12 Am.Jur. § 355, pp. 921-922.)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.