[Civ. No. 19313. Second Dist., Div. Two. Mar. 20, 1953.]

ERIK H. LARSON et al., Appellants, v. JOHN F. THORESEN et al., Respondents.

Robert Wanamaker for Appellants.

Lee J. Myers for Respondents.

MOORE, P. J.—This is a second appeal. (See *Larson* v. *Thoresen*, 36 Cal.2d 666 [226 P.2d 571].) The controversy arose out of a written contract dated August 5, 1947, to pur-

chase a lot in El Monte, to construct thereon a residence and garage, to contribute equally to the cost of the improvements and to share equally in the profits realized from a sale of the premises. The lot was acquired and the building proceeded. In the course of construction the Thoresens occupied the garage while the Larsons dwelt in the residence. On completion of the house, the Thoresens moved in and the Larsons moved out. Irritation developed; ill feelings arose. And by reason of the strained relations a sale of the property was not consummated. But instead this lawsuit was launched by appellants, April 23, 1948. They demanded a partition; damages for depreciation resulting from respondents' alleged prevention of a sale; damages for their alleged ouster and exclusion by respondents; damages for alleged waste caused by respondents; and a declaration of their rights. The Thoresens answered with admissions and denials and by cross-complaint sought damages in the sum of $3,000 for the failure of appellants to perform all the terms and conditions of the contract, to furnish the requisite moneys or labor and materials and to place the property on the market for sale and to agree to a price or terms on which the property could be sold.

The trial was abortive. In lieu of a formal decision the court filed its "opinion and order" which after reviewing the pleadings and the evidence, ordered that the parties proceed vigorously at once to sell the property at private sale for not less than $9,500—the net proceeds to be disbursed as directed in the order. The appeal having been lodged on the ineffectiveness of the "opinion and order" in directing a specific performance of the contract instead of a partition of the property as provided by the Code of Civil Procedure (§ 752 et seq.), it was dismissed. (*Larson* v. *Thoresen, supra.*)

In its opinion dismissing that appeal, the court held (p. 669) that the contract of August 5, 1947, was "indisputable evidence of a joint venture"; contained "no provision that either might occupy the premises or that occupancy by either was a matter of right"; that it was not a proper case for the reviewing court to make findings contrary to or supplemental of those derived by the trial court in order to make final disposition of the controversy without further proceedings in the court below; that the trial court "should have made findings" on whether respondents' occupancy was necessary to safeguard the property and should have resolved the issues "by the application of the governing principles in cases of joint venture." It was held also that section 956a of the Code of Civil

Procedure is not applicable and that following the dismissal "the cause will be pending in the trial court as upon the close of the trial." (P. 670.)

Following the dismissal of the first appeal, the trial court on petition of respondents appointed a receiver to sell the property with authority to pay the cost of the sale, the receiver's compensation, all taxes due, and certain mechanics' and materialmen's claims in the sum of $1,029.01, the balance to be held by the receiver, subject to the court's order. The property was sold for $8,200. On October 10, 1951, the parties stipulated that "the rights and interests of the parties hereto are hereby transferred to the fund arising from the sale" and that the court "may adjust and adjudicate the rights and obligations of the parties as if the said real property had not been sold." Thereupon, pursuant to stipulation a mistrial was declared and a retrial was had on all the evidence taken at the first trial and on such additional evidence as might be presented by either party. Both litigants amended their respective pleadings whereby appellants alleged damages to the extent of the rental value of the premises while occupied by respondents, and the latter upon appropriate allegations to their cross-complaint asked for adjustments of rent collected and taxes and interest paid. After trial the court made its findings and conclusions and adjudged that out of the funds in the hands of the receiver respondents should be paid $4,673.91 and appellants, $1,455.83.

## FINDINGS FOLLOW THE EVIDENCE

In demanding a reversal of the judgment appellants contend that certain findings are contrary to the evidence; that some are deficient; and that while some conflict with others, some are contrary to the pleadings. While it is possible that in stating 30 findings of fact upon the issues raised, the court might have omitted some microscopic detail here or have inserted a slightly repugnant concept there; yet upon a study of the pleadings, the exhibits and the testimony, the conclusion is unavoidable that the findings substantially, fully and harmoniously cover every phase of the controversy as presented by the pleadings and the evidence. While assertions of "unsupported findings" are made, appellants have not pointed out or cited such evidence as the court would have been obliged to adopt, necessitating findings contrary to those that were made. Neither do appellants specify any serious defects in the proof relied upon by the court.

Their principal contention is that respondents failed to

match the monetary contributions to the joint venture by several hundred dollars. Basing their dialectics upon that assertion, appellants contend that respondents cannot be heard to complain of appellants' failure to cooperate in making a sale. In effect, they argue that respondents' obligation to pay was a condition precedent to appellants' duty to cooperate. The evidence does not support such contention. ■ Moreover, the provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. (See *San Diego Constr. Co.* v. *Mannix,* 175 Cal. 548, 556 [166 P. 325]; *Lucy* v. *Davis,* 163 Cal. 611, 614 [126 P. 490]; *Antonelle* v. *Kennedy & Shaw Lbr. Co.,* 140 Cal. 309, 315 [73 P. 966].) There is no such compulsion in the wording of the contract in issue.[1] ■ A more reasonable and just interpretation of the writing is that the duties of cooperating and paying expenses are independent. Under such construction, the mere fact of appellants' payment of $504.63 more than the sum contributed by respondents does not disprove the latter's substantial performance of their obligation to pay. (See *Collins* v. *Ramish,* 182 Cal. 360, 364, 365 [188 P. 550]; *Connell* v. *Higgins,* 170 Cal. 541, 556, 557 [150 P. 769]; *Murphy* v. *Sheftel,* 121 Cal.App. 533, 540

---

[1] "Now, THEREFORE, it is agreed by and between the parties hereto as follows:

"1st. That each of the parties will immediately pay to the owner of the lot herein referred to, the sum of $900.00 in full payment of said lot and title shall be taken in the names of John F. Thoresen and Elide Thoresen, husband and wife, and Erik H. Larson and Clara Marie Larson, husband and wife;

"2nd. That the second party shall pay to the first party the sum of $817.97 in cash, being one-half of the labor and materials paid for to the present time by the First Party in said property;

"3rd. That all unpaid bills for labor and materials heretofore put in said property, and not paid for, and all materials and outside labor necessary for the completion of said property, shall be paid for one-half by the First Party and one-half by the Second Party;

"4th. That for any labor performed by the parties to this agreement in the completion of the dwelling upon said property, or other buildings, the First Party shall be allowed the sum of $2.25 per hour and the Second Party shall be allowed the sum of $2.00 per hour.

"5th. That upon the completion of said buildings, said property shall be placed on the market for sale, at a price and upon terms to be mutually agreed upon between the parties hereto, and after deducting from the sale price, and paying, any unpaid bills for materials or outside labor, any amounts due either party for labor, and the cost of sale, including a broker's commission, if any, escrow fees, Title Insurance Policy, etc., the remainder of the sale price shall be divided equally between the parties hereto.

"6th. Each of the parties hereto, and their respective wifes [sic], whose consent is hereto attached, shall sign any and all papers necessary to carry out the terms of this agreement."

[9 P.2d 568].) Especially is this true in view of *finding 16* that appellants had paid only $504.63 in excess of the sum paid by respondents, and *finding 24* that prior to the first trial there had been no accounting between the parties and it was not known by either party what had been the contribution of the other to the joint enterprise.

## THE FINDINGS

Appellants' contention that certain findings are contrary to the evidence is evidently asserted without first consulting the axiom that appellate courts will resolve every doubt and conflict in favor of the judgment in order to give it validity. Consequently, such attack will succeed only in the event that it can be said that, construing the evidence in its entirety in conformance with the above axiomatic test, the finding of the trial court is so arbitrary and unreasonable that it cannot be sustained. A scrutiny of the record discloses that the findings attacked as ''contrary'' to the proof have substantial support in the exhibits and in the testimony of respondents. For instance, finding 16 is established by the facts that (1) on completion the property was worth $11,000; (2) appellants had advanced only $504.63 more than respondents; (3) such difference was not known to the parties prior to the trial. Payment by appellants of $504 more than had been paid by respondents over a period of four and a half years in a joint venture, entailing so large an expenditure as is here involved is a fact of such slight weight that its influence was not noticeable in the final computation of the sums due each party on division of the proceeds of sale. The action was for partition. The court determined many facts with reference to the investments of each party in order to be enabled fairly to divide the proceeds. So long as the facts of each controverted issue were determined the court was placed in position to do justice between the litigants.

That the court could have found appellants had paid more than $4,932.91 for labor (findings 9 and 10); respondents had performed services worth $927 (finding 12); appellants were entitled to credits of $29.30 and $55.78 (13 and 14); respondents were entitled to credits of $92.09 for taxes paid (15)—these are findings on simple issues predicated on documentary evidence of the effect of which there could be no serious doubt. The finding that respondents had fully complied with the contract and appellants failed to comply by not cooperating with respondents resulted from the court's

adoption of the testimony of respondents and their witness Jameson, and of appellant Erik Larson and its rejection of the evidence of appellants. Because respondents might have neglected some remote or nonessential duty does not vitiate the finding of their having performed their obligations in full. ■ If their compliance was substantial, it was, in legal effect, full compliance.

■ The attack on finding 19 is meaningless.[2] The adoption of respondents' testimony could cause no determination other than that after the Larsons had for two months occupied the house while the Thoresens lived in the garage, appellants moved to Palm Springs, October 22, 1947, and respondents thereafter occupied the house. With the exception of one visit to El Monte, appellants remained in the desert city until the first trial in November, 1948. Therefore, appellants excluded themselves from the new home while it was occupied by respondents to the obvious advantage of both parties, as found by the court.

The finding (22) that respondents caused no damage by their occupancy and did not hinder the sale (finding 25) were rational determinations from the testimony of respondents and the real estate broker, witness Jameson.

■ The contention is made that the trial court was inconsistent in finding the property depreciated to the extent of $2,800 instead of $2,500 as alleged in the answer. While the latter sum may have been the extent of the depreciation at the time of filing the answer, respondents were entitled to recover for all detriment resulting after the commencement of the action (Civ. Code, § 3283). Whereas the evidence showed the value at completion to have been $11,000, at the sale by the receiver it brought only $8,200. Not only does the cross-complaint pray for general relief but appellants in their supplement and amendment to the amended complaint allege the same values at completion and sale as those testified to by respondents. An amendment was therefore not required to allege the damages to have been $2,800. (*Collins* v. *Sargent*, 89 Cal.App. 107, 113 [264 P. 776]; See *Bryson* v. *McCone*, 121 Cal. 153, 159 [53 P. 637]; *Hicks* v. *Drew*, 117 Cal. 305, 312 [49 P. 189].)

[2] "19. That the defendants occupied the real estate described from the time of the completion of the structures to December, 1950, but said defendants did not exclude the plaintiffs from occupying said property, and the defendants occupied said property for the sole purpose of protecting it, to keep it clean, and to facilitate a sale thereof; that the defendants' occupancy of the property did not constitute a violation or breach of the agreement between the parties."

Findings 24[3] and 27[4] are supported by the evidence. ▮ The first was proved by the fact that at the first trial neither party knew the amount of his own contributions to the enterprise. Under a directive of the court, counsel for the parties made investigations and prepared a stipulation (Ex. 6) showing the sums each adventurer had paid. As to finding 24 there was no denial of the fact found. Findings 13 and 14 crediting appellants with the total of $85.08 were, contrary to appellants' assertions, incorporated in finding 16 and made a part of the award.

## FINDINGS MADE ON MATERIAL ISSUES

The assertion that no findings were made with reference to certain material issues is contrary to finding 19, to wit: "That the defendants occupied the real estate described from the time of the completion . . . to December, 1950 . . . to keep it clean, and to facilitate a sale thereof" and that "defendants did not exclude the plaintiffs from occupying said property." Also, finding 25 declares defendants' occupancy did not hinder the sale of the property or discourage its being purchased but increased its salability. Finding 14 covers a material issue in declaring appellants' right to one-half the net rentals collected. While finding 23 is a conclusion of law, it follows other findings to the effect that appellants had no right to a credit for rent while respondents occupied the house. Finally, it was a material issue as to whether the sale of the property rendered moot the count for declaratory relief. Finding 31 determined that the right of occupancy had become a dead issue. Thus the findings cover all material issues and they do so to a substantial degree, omitting nothing that was necessary or material to a solution of the controversy.

## No INCONSISTENCY IN CONCLUSIONS

Appellants complain that the formal decision makes no mention of the attorneys' fees and rentals purportedly awarded

---

[3]"24. That there was no accounting between the plaintiffs and the defendants prior to the trial of this action, and it was not known by either of the parties what the contribution of the other was to said enterprise prior to the trial of this action."

[4]"27. That by reason of the failure and refusal of the plaintiffs to pay their share of the unpaid bills for labor and materials in the construction of the buildings referred to in the written agreement between the parties, said bills being listed in paragraph 8 hereof, interest in the amount of $288.12 accrued on said bills prior to payment by the Receiver, and the defendants are entitled to judgment against the plaintiffs for said amount, and payment shall be made out of the plaintiffs share of the funds in the hands of the Receiver."

by the "memorandum decision." Such complaint has no basis for the reason that the trial court's opinion is sterile of potency and, as against the findings and conclusions is without legal status. No utterance of the trial judge, either in a memorandum prepared for the aid of counsel or in an extemporaneous remark during the trial, affects in the slightest degree his formal findings and award. (*Scholle* v. *Finnell*, 173 Cal. 372, 376 [159 P. 1179]; *Putman* v. *Superior Court*, 209 Cal. 223, 227 [286 P. 425].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.