[Civ. No. 22931. Second Dist., Div. One. July 10, 1958.]

PACIFIC ALLIED (a Corporation), Respondent, v. CEN-
TURY STEEL PRODUCTS, INC. (a Corporation), Ap-
pellant.

W. E. Kalbfleisch for Appellant.

John W. Shenk III, and John F. O'Hara for Respondent.

LILLIE, J.—On April 17, 1954, the parties entered into a "Purchase Agreement," whereby defendant agreed to build for plaintiff certain steel forms for storm drain construction.

A controversy arose over the guarantee therein, whereby defendant agreed to reimburse plaintiff for labor costs over a specified minimum. Plaintiff sued to recover excess labor costs of $3,304.31. The case was heard by the court without a jury and, after deducting certain amounts, the court rendered its judgment for $2,982.96. Defendant appeals therefrom and from the order denying its motion for new trial.

Viewing the evidence in the light most favorable to respondent, the following is a brief summary of the pertinent facts. At the insistence of defendant corporation, manufacturer of steel forms, plaintiff corporation, engaged in storm drain construction, agreed to try its forms if defendant would guarantee that as a result of their use plaintiff's labor costs per square foot would not exceed four cents. The following guarantee was included in the purchase agreement:

"Item. 6 This entire purchase agreement is based upon the sellers guarantee that these forms and carrier when used by the buyer to complete that part of the reinforced concrete box conduit section of the Alameda-Toluca Park Storm Drain, Projects 166 and 167 for which they are designed and intended, will not exceed four cents per square foot (labor only) to place, strip and move the form of the exposed inside concrete surface. It being further mutually understood and agreed that the final cost of these forms and carrier to the buyer will be based upon actual labor costs per foot, a continuous report of which will be furnished the seller. It being understood that the moving of these forms will be done in accordance with the directions and guidance of the seller as initially set up, thereby satisfying the seller with the field methods employed so as to assure the most favorable results from a cost standpoint.

. . . . . . . . . . . . . .

"Item. 9 While it is provided under Item 5 that the total price to be paid at time of delivery is $10,900.00, it is further and definitely understood and agreed that as is provided under Item 6 should the labor cost as defined therein, total more than four cents per squareft, (sic) the seller will immediately upon completion of the job and upon an itemized cost breakdown being submitted by the buyer, return to the buyer sufficient money to result in a total cost to the buyer on the direct labor involved for moving and setting forms of four cents per square foot."

Prior to the execution of the contract McDonald, president of plaintiff, advised Fritz, president, and Schaper, vice presi-

dent, of defendant, that a complete breakdown of cost would be kept on the work and explained its method of keeping costs, daily record, and posting to the weekly record against the item and the quantity of work done. He showed Schaper the books and the method of keeping time cards and the distribution of items on the total job, of which Schaper approved; and advised him the records would be available to defendant at any time.

Plaintiff commenced work with defendant's forms May 6, 1954. McDonald and Clark of plaintiff corporation were on the job daily. There was a constant communication between plaintiff and defendant during this time and they were in touch with each other almost every day. From the beginning, plaintiff kept a daily account of costs of that part of the job involving labor to "place, strip and move" the forms, being designated on its books and records as "8-4." Daily time cards (Exhibit No. 5) showing dates, hours worked and names and number of men working on "8-4" were also kept. A compilation (Exhibit No. 4) taken from the books and records of plaintiff shows the time and money involved on "8-4," dates of entries, locations of sections worked, square footage worked each day, total square footage and labor costs to each date and unit costs.

The work was finished August 13, 1954. On September 7th plaintiff wrote a letter to defendant demanding $3,304.31 excess labor costs, to which was attached the following "Statement of Cost":

"Statement covering use of steel forms as provided for under purchase agreement between Century Steel Products, Inc., and Pacific Allied dated April 17, 1945:

| | |
|---|---|
| 63,677 | sq. ft. contact surface area |
| $ .04 | per sq. ft. as specified in agreement. |

| | |
|---|---|
| $2,547.08 | total cost @ 4c per sq. ft. |
| $5,851.39 | total actual labor cost to place, strip, and move steel forms. |
| $2,547.08 | total cost @ 4c per sq. ft. |

| | |
|---|---|
| $3,304.31 | excess cost as covered by letter of transmittal." |

Defendant refused to pay the amount and this action resulted.

The trial court made detailed findings of fact and concluded that plaintiff substantially performed all obligations to be

performed by it under the agreement and that strict compliance with the provisions relating to following directions and submission of an itemized cost breakdown were waived by the actions of the defendant.

Although objecting to specific findings as contrary to the evidence and law, appellant's basic contention is that the provisions in the agreement referring to a "continuous report" and "itemized cost breakdown" must be strictly construed and constitute conditions precedent to recovery.

■ In determining the sufficiency of evidence to sustain questioned findings, an appellate court must accept as true all evidence tending to establish the correctness of the findings made, taking into account all inferences which might reasonably have been thought by the trial court to lead to the same conclusion and every substantial conflict in the testimony is to be resolved in their favor. (*Burke* v. *Chrostowski*, 46 Cal. 2d 444 [296 P.2d 545]; *McCarthy* v. *Tally*, 46 Cal.2d 577 [297 P.2d 981]; *McCreary* v. *Mercury Lumber Distributors*, 124 Cal.App.2d 477 [268 P.2d 762].)

■ Appellant contends that the trial court's finding that no certain instructions as to placing, stripping and moving the forms were given plaintiff by defendant and that such as were given were followed; and its conclusion that strict compliance with any provision in reference thereto was waived by the action of defendant, were contrary to the evidence.

We find no error in the trial court's finding or conclusion. There is nothing in the agreement requiring plaintiff to follow instructions in *placing* and *stripping* the forms. Item 6 refers only to moving: "It being understood that the moving of these forms will be done in accordance with the directions and guidance of the seller as initially set up. . . ." The evidence discloses that no particular directions for moving were initially given by defendant. Clark had several conversations with Fritz and Schaper throughout the entire operation regarding the use of the forms, including moving, but the exact detail and manner in which the forms were to be moved was never discussed because "it was obvious how they were to be moved; only one way to do it." On May 28, 1954, defendant wrote to plaintiff making a number of suggestions to expedite the placing, stripping and moving, with which plaintiff complied. Thereafter because of increasing costs plaintiff wrote to defendant suggesting it take certain steps, but no reply was received.

As a further ground for reversal, appellant urges that since a "continuous report" of actual labor costs was to be furnished, the trial court's finding thereon is contrary to the evidence and that strict compliance with the requirement is a condition precedent to plaintiff's recovery. The court found that plaintiff orally informed defendant at least once a week of the high cost of labor in placing, moving and stripping the forms; that on June 7, 1954, plaintiff wrote defendant that the costs were substantially more than 4 cents per square foot; that defendant was aware of said increased cost throughout the length of the job; that the reports and records of said job were continually available to defendant, but at no time did defendant avail itself of them; and that continuous oral reports were furnished defendant; and defendant, by its actions, waived any further report.

Item 6 in part provides: "It being further mutually understood and agreed that the final cost of these forms and carrier to the buyer will be based upon actual labor costs per foot, a continuous report of which will be furnished the seller." The record contains substantial evidence to support the trial court's finding. It discloses that during the time the work was being done, there was constant communication between the parties; that Clark called Fritz on the telephone almost every day with regard to the increased costs; that plaintiff kept daily accounts of cost and "right from the beginning continuously" communicated with defendant almost daily about them; that plaintiff repeatedly advised defendant of the excess cost and on occasion "advised them to see us as often as possible"; and on June 7, 1954, wrote to defendant that costs were running in excess of 4 cents per square foot. Defendant originally approved plaintiff's method of keeping books and time cards, knew of the complete daily record of costs and was aware of their availability to defendant at all times. Defendant did not ask to see them nor did it ever request a written report of costs during this time.

Appellant argues that before plaintiff can recover it must strictly comply with the provision that a "continuous report" be furnished. The old rule of strict compliance with the terms of a contract urged by appellant has been modified and relaxed in California. (*Atowich* v. *Zimmer*, 218 Cal. 763 [25 P.2d 6].) The court, in *Thomas Haverty Co.* v. *Jones*, 185 Cal. 285 [197 P. 105], discussing the doctrine of substantial performance as against the rule of strict compliance, pointed out that if there has been substantial performance in

good faith, if the failure to make full performance can be compensated in damages and if the omissions and deviations were not wilful or fraudulent and do not substantially affect the usefulness of the work for the purposes for which it was intended, the performing party may in an action upon the contract recover the amount unpaid in the contract price less the amount allowed as damages for the failure of strict performance. In recognizing the hardship often involved in the rule requiring strict performance, the court, citing *Connell* v. *Higgins,* 170 Cal. 541 [150 P. 769], held that the question of what constitutes substantial performance is to be determined in each case with reference to the particular facts and circumstances, together with the intention of the parties and the purpose of the contract.

 Taking the contract in the instant case according to its general intent and purpose, defendant, in order to persuade plaintiff to use its forms, guaranteed in writing it would reimburse plaintiff for all labor costs in excess of 4 cents per square foot and warranted that the labor could be performed for such sum. Obviously during operations defendant wanted to be kept informed whether costs were above or below the four cents. This was the real purpose of the "continuous report." Nothing in the writing states how, when, or in what form it was to be made. Without doubt, particularly in view of the "almost daily" and continuous communication between the parties, defendant at all times throughout the entire job was aware of the excess costs. How could a daily written, or any other kind of a report better serve the purpose for which the continuous report was to be furnished? No request for a continuous daily written, or any, report was ever made by defendant until after the controversy arose, from which it may be reasonably inferred that defendant was satisfied with the kind of report and cost information it had received. Of interest here is the court's statement in *Thomas Haverty Co.* v. *Jones, supra,* 185 Cal. 285, at page 297: "The contract provided that the contractor should keep careful and complete records of his installation of the systems provided for and show by drawings 'every important detail of the system,' and that his records should be delivered to the owner before final acceptance. It is claimed that this condition was not complied with. Drawings were furnished to the defendant in attempted compliance with this provision but they were, in certain unimportant particulars, inaccurate. The court found

that no damage was sustained by reason thereof. The evidence shows that the defendant never expressed any dissatisfaction therewith or demanded any different or additional report or statement. We think strict performance of this provision was waived.''

The instant case is one in which the rule of substantial performance well applies and it would seem unreasonable in the light of the purposes for which the report was to be made and the conduct of the defendant in connection therewith, to uphold appellant's contention; nor can we find that the defendant was in any way prejudiced by the lack of any other kind of report. The question of the application of the relaxed interpretation of the rule of strict compliance seems definitely concluded by the finding of the trial court that there was a substantial performance of the contract in this regard which this court will not disturb.

■ Appellant's next point involves the requirement in the guarantee that an ''itemized cost breakdown'' be furnished. The trial court found that after the job was completed, plaintiff submitted to defendant a ''Statement of Cost''; that defendant did not request of plaintiff any further itemization or cost breakdown but denied any liability whatever under its guarantee; that such itemization was continuously available to defendant and that it was submitted to defendant during the trial. It concluded that strict compliance was waived by the action of the defendant.

Item 9 provides in part: ''. . . the seller will immediately upon completion of the job and upon an itemized cost breakdown being submitted by the buyer, return to the buyer sufficient money to result in a total cost to the buyer on the direct labor involved for moving and setting forms of four cents per square foot.'' The ''Statement of Cost'' presented to defendant after the job was completed, although showing the number of square feet of contact surface area, actual labor costs per foot, the cost at four cents per square foot and the excess cost to plaintiff, at its best is not an ''itemized cost breakdown.'' However, there is substantial evidence to the effect that defendant at no time before the controversy arose made objection that an itemized cost breakdown was not submitted or disputed the figures. At first the delay in defendant's payment was because plaintiff's demand ''hit him (Fritz) hard'' and he didn't want to discuss it then. Later, Fritz told the plaintiff, in connection with payment, that if it would order some more forms defendant might be able to

absorb the loss and pay the amount. At another point defendant wanted time in which to pay. After some time, it finally denied liability altogether. At all times, plaintiff's books and records contained an itemized cost breakdown and were available to defendant, as it well knew. After September 7, 1954, on at least three separate occasions, Clark told Fritz that he would be glad to furnish in detail complete information on any phase of the operation in connection with the "Statement of Cost," but no request was ever made, nor was any request ever made for an itemized cost breakdown. On one occasion, Clark suggested that someone from defendant come out and go through the complete record, but no one did. During the trial, an itemized cost breakdown, time cards and a complete compilation from plaintiff's books and records were furnished to defendant. It is clear from the record that defendant waived any further itemization and that the evidence clearly supports the trial court's findings and conclusion.

There is no need to further discuss the rule of substantial compliance except to point out that from a reading of the agreement the purpose in submitting the "itemized cost breakdown" was to apprise the defendant that the labor cost totaled more than four cents so that it could pay the excess or challenge the amount if it disagreed. At no time was defendant foreclosed from obtaining the final and itemized figures, had it desired them, and at all times the books and records of plaintiff were open to it. However, it is clear from the evidence defendant did not refuse to pay because the bill was not itemized or because the amount was incorrect, nor did it complain because no breakdown was furnished; it refused to pay because it felt that the charge was not warranted at all. It cannot now defeat plaintiff's claim by representing that it did not pay because an itemized bill was not presented. Under the circumstances, it would be unreasonable and unfair to now deprive the plaintiff of the guarantee because of a failure to submit an itemization of cost, particularly since we can find in the record no prejudice to defendant as a result of its failure to receive an itemized cost breakdown.

Appellant's contention that submission of the "itemized cost breakdown" is a condition precedent to plaintiff's recovery is without merit. There is nothing in the agreement requiring such a construction. Conditions precedent are not favored in the law and the provisions of a contract will not be construed as conditions precedent in the absence of lan-

guage plainly requiring such construction. (*Larson* v. *Thoresen*, 116 Cal.App.2d 790 [254 P.2d 656]; *San Diego Construction Co.* v. *Mannix*, 175 Cal. 548 [166 P. 325]; *Front St., M. & O. R. R. Co.* v. *Butler*, 50 Cal. 574.) This is particularly true when a strict construction works a forfeiture. (*Antonelle* v. *Kennedy & Shaw Lumber Co.*, 140 Cal. 309 [73 P. 966].) Whether a provision constitute a condition or a covenant is determined from the whole document, its purpose and the intention of the parties. (*Ernst* v. *Cummings*, 55 Cal. 179.) Certainly, in the agreement at bar neither the express terms, nor necessary implication thereof, require the provisions in question to be construed as conditions precedent. From a reading of the entire agreement, in the light of the evidence, it is clear that the furnishing of a "continuous report" and an "itemized cost breakdown" was incidental, although important, to the main purpose of the agreement. In Item 6 the parties mutually agreed that the final cost of the forms to plaintiff would be based upon actual labor cost per foot, "a continuous report of which will be furnished the seller." The quoted phrase provided the manner in which the defendant was to be informed of the cost. In Item 9 the defendant agreed that upon completion of the job and upon receiving an "itemized cost breakdown" it would return certain excess labor costs to plaintiff. The purpose of both of these requirements was to inform the seller whether the costs were in excess of the four cents per square foot and the amount thereof. Neither the language of the contract nor the testimony of the parties support appellant's contentions that either provision was to be considered a condition precedent to the recovery of the amount and we believe that the substantial performance found by the trial court is all that was required of plaintiff.

Appellant's further argument that plaintiff did not keep bookkeeping records of labor costs only to place, strip and move the forms is specious. The record is replete with evidence that plaintiff not only kept detailed records, daily and otherwise, of the labor and the costs of the job in question, designated "8-4," but actual time cards and a complete compilation based on the books and records of plaintiff which disclose in detail the actual square footage of contract surface area in which the forms were used, the actual daily labor costs, etc. Plaintiff included in the "moving, stripping and placing" the oiling and scraping, which the lower court found to be proper and which this court affirms. Other portions of the job were not included in "8-4." Although some overtime and

labor costs of erecting bulkheads were included, the trial court deducted the same from the actual labor cost.

Appellant also urges error in the trial court's findings that the work of scraping and oiling was necessarily included in "placing, stripping and moving" the forms. Item 6 provides: "This entire purchase agreement is based upon the sellers guarantee that these forms and carrier when used by the buyer . . . will not exceed four cents per square foot (labor only) to place, strip and move the form of the exposed inside concrete surface." The agreement did not define these terms and the trial court, no objection being made by appellant, permitted extrinsic evidence as to the meaning of "stripping" and whether scraping and oiling were a necessary part of the operation. The court had its choice of accepting the testimony of McDonald who was constantly on the job and who had 17 years' experience as a contractor, seven of which were exclusively in the construction of storm drains; or the testimony of Fritz whose business is steel fabrication; and of Miller, who although having worked with defendant's steel forms, was a former carpenter with one month's experience as a general contractor and whose qualifications in this matter were questioned. The trial court accepted the testimony of McDonald. He testified that at no time prior to the time the controversy arose did the defendant advise him that placing, stripping and moving did not include oiling and scraping; that scraping the forms is a part of the operation of placing, moving and stripping and cannot be separated from it; that the ease in stripping is dependent upon the oiling and there is no way by which the two operations can be separated. He told the trial judge: "If you don't oil, you don't strip," and it becomes a part of the concrete so there is no way to separate it; that he does not know any contractor who separates the work and that any surface exposed to freshly poured concrete has to have oil and the steel forms must be oiled. He testified, in effect, that oiling and stripping were a necessary part of placing and moving and were included therein. This is clearly a matter of a conflict in the evidence and we find substantial evidence in the record to sustain the trial court's findings.

Appellant finally objects to the trial court's finding that plaintiff was not guilty of any lack of exercise of due care and diligence in placing, stripping and moving the forms. Negligence on the plaintiff's part was set up as an affirmative defense. It is clear from the record that no evidence was offered in this connection except the testimony of

two witnesses that their labor cost in placing, stripping and moving defendant's forms was around four cents per square foot. The mere fact that others could use defendant's forms at less labor cost than plaintiff does not itself constitute negligence. Excess cost arising in the exercise of due care must have been contemplated by the parties, otherwise they would not have entered into the guarantee. The only other evidence offered related to Mr. Fritz' testimony that there was lack of supervision, but again no specific instances were related and no other showing was made. On the other hand, the record shows that Clark and McDonald of plaintiff corporation were on the job almost daily, were long experienced in storm drain construction and supervised the work, keeping a constant eye on labor costs. This contention seems to merit no further comment.

Judgment affirmed. Appeal from order denying motion for new trial dismissed.

White, P. J., and Fourt, J., concurred.