[Civ. No. 51963. First Dist., Div. One. Sept. 18, 1981.]

LEO B. HELZEL et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
CLYDE R. GIBB et al., Real Parties in Interest.

**COUNSEL**

Scott Noble and Belzer & Jackl for Petitioners.

No appearance for Respondent.

Marshall Cornblum and Bolton, Cornblum & Johnson for Real Parties in Interest.

**OPINION**

**GRODIN, J.**—This case poses procedural questions arising from application of California's arbitration statute (Code Civ. Proc., § 1280 et seq.)[1] to a stock purchase agreement containing a two-phase procedure for the appraisal of corporate shares. Phase one called for separate ap-

---

[1]All statutory references in this opinion are to the Code of Civil Procedure, unless otherwise indicated.

praisals by two designated appraisers. If the disparity between their two appraisals was less than 20 percent, then the purchase price was to be the mean between them. But if, as was the situation here, the disparity was greater and the parties were unable to arrive at an agreement within ten days, then those two appraisers were to appoint a third, and the purchase price was to be determined on the basis of the third appraisal *or* the mean between the first two appraisals, whichever was the greater.[2]

Petitioners are the sellers under that agreement, and by a petition to compel arbitration in the trial court (§ 1281.2) they sought to compel the buyers to proceed with appraisal by a third appraiser under phase two. Real parties in interest are the buyers, and by action for declaratory and injunctive relief in the trial court they sought to avoid phase two on the ground that the phase one appraisers did not do their job properly, that their appraisals did not conform to the instructions contained in the agreement. The trial court ordered the sellers' petition to compel arbitration deferred pending determination of the issues presented in the buyers' declaratory relief action. The sellers, contending that those issues should themselves be deferred until after completion of phase two, sought relief from the court's order through a petition for mandate or prohibition. We issued an alternative writ of mandate and stayed all proceedings pending its determination. As will appear, we are persuaded that the sellers are correct, and that they are entitled to the relief sought.

### FACTUAL AND PROCEDURAL BACKGROUND

Mardeco, Inc., one of the real parties in interest, is a closely held California corporation whose principal asset is real estate. Sixty-six percent of its outstanding shares are owned by Clyde R. Gibb, the other real party. The remainder of its shares are owned by petitioners Leo B. Helzel, Rudolph Hurwich, and Robert C. Rehfeld. On March 24, 1980, the parties entered into a written agreement whereby Gibb agreed to purchase, or cause Mardeco to redeem, all of petitioners' stock. The

---

[2]The agreement stated: "However, if the difference between the higher and lower appraisal is greater than the difference as described above [i.e., 20 percent], then, in that event, Buyer and Sellers shall attempt to agree upon the purchase price using the two appraisals as a basis for agreement. In the event that the parties cannot agree upon a purchase price per share within ten (10) days after receipt of both appraisals, then, in that event, the two appraisers above appointed shall appoint a third appraiser, who shall appraise the fair market value of the shares hereunder and whose determination of the price shall be final; . . ."

purchase price of the shares was to be determined by the procedure outlined above. The two designated first-phase appraisers were an appraisal firm called Holabird & Andrews (Holabird) and Wells Fargo Bank (Wells Fargo).

On May 13, 1980, Holabird submitted its appraisal valuing Mardeco's outstanding shares at $920,000, and then on June 16, 1980, submitted an amended appraisal at a figure of $1.15 million. Wells Fargo submitted its appraisal in May 1980 at a figure of $2,056,000. Since the Wells Fargo appraisal exceeded the Holabird appraisal by more than 120 percent, the parties met in an attempt to agree upon a purchase price.

Their attempt at agreement failed, and on July 18, 1980, petitioners made written demand on real parties for the appointment of a third appraiser. Having received no response from real parties to this demand by August 27, 1980, petitioners made a written request of Wells Fargo and Holabird that they appoint a third appraiser. Real parties countered with an objection in writing to the appointment of a third appraiser, and advised all parties that if a third appraiser were appointed they would not pay the costs thereof.

On November 25, 1980, petitioners filed their petition to compel arbitration, through appointment of a third appraiser. On January 7, 1981, real parties filed their action for declaratory and injunctive relief, alleging that both Holabird and Wells Fargo had failed to comply with the appraisal instructions. These instructions required the appraisers to consider Mardeco's business to be that of primarily owning income-producing property, to consider the shareholders as tenants in common of such real property, to use appraisal procedures customarily followed in valuing income-producing real property, and to avoid using appraisal procedures customarily followed in valuing stock in a corporation. Real parties contended that the procedures which Holabird used in reaching its amended appraisal, and the procedures which Wells Fargo used in reaching its appraisal, were not in accord with these instructions. They asked the court to fix the purchase price at the initial Holabird valuation less amounts for Mardeco's long-term indebtedness which they say Holabird failed to take into account, or determine itself the fair market value of the shares in accordance with the appraisal instructions. They sought also to enjoin petitioners from proceeding with their petition to compel arbitration until the issues presented in their complaint were determined.

Petitioners responded with a motion pursuant to section 1281.4[3] for a stay of real parties' action pending determination of their petition to compel arbitration. By its order dated February 6, 1981, respondent court concluded "that there are other issues between petitioners and respondents which are not subject to arbitration and which are the subject of a pending action in Alameda County Superior Court [brought by real parties] between the petitioners and the respondents and that a determination of such issues may make the arbitration unnecessary," and ordered that decision on the petition to compel arbitration be delayed until determination of the issues presented in the other proceeding.

## DISCUSSION

At the outset, we observe that the relief sought by real parties in their action for declaratory and injunctive relief—to have the trial court adopt the initial Holabird appraisal or conduct an appraisal of its own—would be entirely inappropriate even if their contentions as to the invalidity of the second Holabird appraisal and the Wells Fargo appraisal were correct. The parties agreed that the fair market value of the shares would be determined by a two-phase system of appraisals, not by a single appraiser, and certainly not by the court. ▮ "[A]greements providing for valuations, appraisals and similar proceedings" are within the definition of "agreements" subject to the arbitration statute (§ 1280, subd. (a)), and it is fundamental to the policies implicit in that statute that such agreements are to be given full force and effect.[4] If it were determined, by applicable procedures and

---

[3]That section provides: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon a motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

[4]Under earlier arbitration statutes, appraisals were excluded. (*Bewick* v. *Mecham* (1945) 26 Cal.2d 92 [156 P.2d 757, 157 A.L.R. 1277].) In its report which forms the basis of the current statute, the California Law Revision Commission criticized this exclusion and urged that the statute be amended to expressly extend coverage to

standards, that the appraisals complained of were invalid,[5] the appropriate remedy would not be to substitute a valuation method different from that agreed upon, but rather to order the appraisals conducted anew, in accordance with the agreement.

■ This observation serves to underscore a more fundamental point: the procedure utilized by real parties to block further arbitration proceedings was itself inappropriate under the statutory scheme. That scheme provides for petitions relating to arbitration to be "heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions." (§ 1290.2.) Where, as here, a party petitions to compel arbitration, and alleges "the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy," the court is generally obligated to order arbitration "if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement." (§ 1281.2.) Where arbitration has been ordered, the party resisting arbitration must await the final judgment confirming the award in order to appeal. (*Ibid.*)

■ The procedure sought to be utilized by real parties is substantially at odds with this statutory framework. Instead of proceeding in the summary fashion contemplated by the statute, real parties sought to invoke a full-scale evidentiary hearing culminating in an appealable judgment. Whatever the outcome, the effect would be substantial delay of a sort that the arbitration statute was designed to avoid.

Real parties, and apparently the trial court in making its order, relied upon the following sentence of section 1281.2: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the

---

appraisal proceedings. (Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) pp. G-12, G-34 to G-35.)

[5]We use the terms "invalid" and "valid" throughout this opinion as a shorthand expression for the statutory grounds upon which an award may be vacated. (§ 1286.2.) Those grounds are extremely limited. (See *Morris v. Zuckerman* (1968) 69 Cal.2d 686 [72 Cal.Rptr. 880, 446 P.2d 1000]. Compare *Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880], upholding vacation of appraisal award "based upon a misconception of the law" in the application of the statutory term.) We express no opinion as to whether the objections asserted by real parties to the validity of the initial appraisals would meet the statutory test.

respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." That reliance, however, is misplaced. The above sentence of section 1281.2, together with the provisions of section 1281.4, were apparently drafted in order to give courts power to deal with a situation in which part of the controversy between the parties is subject to arbitration and part is not. (Cf. *Parker* v. *Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895 [173 Cal.Rptr. 639].) Here, the entire controversy between the parties—the valuation of the subject stock—was subject to arbitration. The issues sought to be raised by real parties were integrally related to the agreed-upon arbitration process. And, assuming for the sake of argument that those issues could properly be raised at the stage of the proceedings at which real parties sought to raise them, their determination in favor of real parties' contentions could not "make the arbitration unnecessary." Rather, as we have observed, such determination could, at most, require the arbitration process to begin anew.

We conclude, for these reasons, that the trial court erred in ordering a halt to the proceedings under section 1281.2 pending determination of the issues raised in real parties' action for declaratory and injunctive relief. But, while this conclusion is technically determinative of the question posed by the application for the writ, we proceed now to consider the underlying question framed by the parties in their oral argument and in their supplementary briefs, the answer to which is essential to the guidance of the parties and the trial court once the writ issues. That question is whether the arbitration statute permits through any procedure the sort of interlocutory attack upon preliminary phases of the arbitration process which real parties seek to make, given the terms of their agreement, or whether it requires that the issues asserted by real parties be deferred until the arbitration process is completed.

The question is a difficult one, because the procedure which the parties have chosen does not fit the pattern of the typical arbitration process. One possible mode of analysis is to view the determinations of each appraiser in the first phase as an "award" within the meaning of the arbitration statute. The legal consequence of such a characterization is that a party who is able to assert a statutory ground for vacating the award, such as that the appraiser "exceeded [its] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (§ 1286.2, subd. (d)) could do so

through a timely petition for vacation (§ 1285). Another consequence, however, is that a party who might wish to assert such a statutory ground for vacating an appraiser's determination would be *obligated* to do so within 100 days after its receipt (§ 1288). In this case, since real parties filed no petition for vacation of either appraisal to which they object, and for that matter took no legal action within 100 days of the receipt of either appraisal, they would be barred from asserting that the appraisers exceeded their powers not only at the present stage of the proceedings, but forever.

Characterizing these appraisals as "awards" at the present time, however, does not appear to accord either with the statutory scheme or with the intention of the parties. If the disparity between the two appraisals had been within the limits set by the agreement, then the two appraisals *considered together* would constitute an award, determinative of the controversy, and a petition for confirmation, correction, or vacation would have been in order. But, since the disparity exceeded those limits, the appraisals have no determinative effect under the agreement other than to trigger the second phase, unless the mean of those awards turns out to be greater than the value determined by the third appraiser. Moreover, to characterize the appraisals as awards at this stage, and thus subject them to attack on statutory grounds, would invite dilatory tactics, for even if the attack were unsuccessful and judgment were entered confirming the appraisal as a statutory award, the judgment would be appealable; and the pendency of the appeal would cast a long-term cloud upon any subsequent proceedings. Finally, to *require* a party to assert any claim which it may have to the invalidity of the award on such an interlocutory basis, upon penalty of abandoning the claim as a result of the statutory time limits, would tend to encourage such litigation even by a party who would otherwise be content to await the outcome of the second phase. For these reasons, we conclude that the appraisals do not constitute statutory awards unless and until, pursuant to the terms of the agreement, they serve to determine the controversy.[6]

▇ We consider, finally, real parties' alternative contention that the trial court, in ruling upon the petition to compel arbitration under section 1281.2, should determine the validity of the first phase appraisals

---

[6]As petitioners apparently concede, the first-phase appraisals will be subject to limited statutory review as part of the ultimate award even if the third appraiser's figure is greater than the mean between them and therefore, under the agreement, controlling. This is so because the validity of the second phase is dependent upon the validity of the first.

as a condition precedent to their obligation to participate in the second phase. The question is, primarily, one of contract interpretation; and, given the absence or tender of extrinsic evidence, one of law. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].) The parties could have contracted for such a result expressly, but they did not do so.[7] The narrow question presented, therefore, is whether such a result should be implied from the terms of the agreement and the function it was designed to serve.

In favor of such an implication is the obvious proposition that if the first phase appraisals, or either of them, are invalid in the sense that they could not operate to sustain an ultimate award, then requiring the parties to undergo a third appraisal may prove to be an idle act. If they are invalid, in that sense, then a determination of their invalidity now could save the parties additional time and expense. To that extent, an implication of terms such as contended for by real parties would be reasonable.

We are persuaded, however, that countervailing considerations compel a different conclusion. ■ As a general rule of contract construction conditions precedent are not favored and an agreement will be strictly construed against a party asserting that its provisions impose a condition precedent. (*Yamanishi v. Bleily & Collishaw, Inc.* (1972) 29 Cal.App.3d 457 [105 Cal.Rptr. 580]; *Owens v. Owens* (1962) 210 Cal. App.2d 705 [26 Cal.Rptr. 847].) Normally, provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such a construction. (*Rubin v. Fuchs* (1969) 1 Cal.3d 50 [81 Cal.Rptr. 373, 459 P.2d 925]; (*Yamanishi v. Bleily & Collishaw, Inc., supra*, 29 Cal.App.3d 457; *Larson v. Thoresen* (1953) 116 Cal.App.2d 790 [254 P.2d 656].)

---

[7]It should be noted that the relationship of the third appraiser to the first two appraisers under the subject agreement is substantially different from the normal relationship of an arbitrator to the preliminary stages of the arbitration process. In labor arbitration, for example, it is the *arbitrator* who decides whether conditions precedent to arbitration have been met (e.g., *John Wiley & Sons v. Livingston* (1964) 376 U.S. 543 [10 L.Ed.2d 411, 83 S.Ct. 1300]). As real parties correctly observe, the third appraiser would not be called upon to make such a determination here; and if the parties had conditioned the obligation to proceed to the second phase upon a determination as to the validity of the first phase, it would of necessity be the court that would make such a determination. (Cf. *Opan Realty Corp. v. Pedrone* (1975) 36 N.Y.2d 943 [373 N.Y.S.2d 549, 335 N.E.2d 854].)

This agreement reflects an intent of the parties that determination of the value of the shares be undertaken as expeditiously as possible. It sets a limit, for example, of ten days after receipt of both first phase appraisals within which the parties are to either agree upon a purchase price or proceed to appointment of a third appraiser. Interposition of a judicial proceeding between the first and second phase could well consume more time, and more expense, than completion of the process. And, there would exist the real possibility of two judicial proceedings, one at each phase of the appraisal process. It is exceedingly unlikely that the parties contemplated such a piecemeal procedure.

Finally, petitioners' self interest serves as some insurance against the possibility that the third appraisal will prove an idle gesture. Petitioners concede that the validity of the initial appraisals, if they continue to be questioned, may be subject to judicial scrutiny by appropriate procedures and standards after the third appraisal is completed; and, they, presumably, have no interest in seeing an idle process go forward. The parties of course have the right to withdraw from an arbitration proceeding if they *agree* that some preliminary error will invalidate the proceeding. (*Gerard* v. *Salter* (1956) 146 Cal.App.2d 840, 844 [304 P.2d 237]; *Arrieta* v. *Paine, Webber, Jackson & Curtis, Inc.* (1976) 59 Cal.App.3d 322, 330 [130 Cal.Rptr. 534].)

The choice is between a procedure which could result in unnecessary litigation and a procedure which could result in unnecessary arbitration proceedings. The latter choice, under the circumstances of this case, is more compatible both with this state's policy of encouraging arbitration as an alternative to the judicial resolution of disputes (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706 [131 Cal.Rptr. 882, 552 P.2d 1178]), and with the tenor of the agreement between these parties.

A peremptory writ will issue directing the trial court to stay further proceedings in action No. 541503-4, and to grant the petition to compel arbitration in action No. 540229-4. Petitioners shall recover their costs of suit from real parties as determined by the trial court pursuant to a memorandum of costs and disbursements to be filed therein within 30 days of the date of transmittal of a certified copy of this opinion.

A petition for a rehearing was denied October 16, 1981, and the judgment was modified to read as printed above.