Filed 8/28/20  Douglas Emmett 2013, LLC v. 1&G Direct Real Estate 10, LP CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DOUGLAS EMMETT 2013, LLC, | B295429 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC708800) |
| v. | |
| I&G DIRECT REAL ESTATE 10, LP, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Elizabeth A. White, Judge.  Affirmed.

Greines, Martin, Stein & Richland, Kent L. Richland, David E. Hackett; Cox Castle & Nicholson, Edward F. Quigley, Stacy L. Freeman and Alicia N. Vaz for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Anthony J. Oliva and Nancy S. Fong, for Defendant and Respondent.

_____

Appellant Douglas Emmett 2013, LLC (Douglas Emmett) leases property to respondent I&G Real Estate 10, LP (I&G). The long-term lease (Lease) requires that the rent be recalculated periodically as a percentage of the current fair market value of the property. The Lease provides that, absent agreement between the parties, a panel of appraisers must determine the value of the property for purposes of rent calculation.

The trial court ordered that the court, rather than the appraisers, must decide the proper valuation *method* under the Lease. Douglas Emmett disagrees and appeals from that order.[1]

In addition to the appraisal provision, the Lease provides for arbitration of some disputes. The Lease expressly states that "arbitrators" shall not have the authority to interpret the Lease or the law. Determining the appropriate method for assessing the fair market value of the property requires interpreting the Lease. Thus, the dispositive issue on appeal is whether the Lease's reference to "arbitrators" in this context includes the appraisers.

We conclude that it does. The parties agree that the appraisers perform an arbitration function under the Lease. It is therefore reasonable to conclude that the parties intended to include appraisers within the broad category of "arbitrators" who are not permitted to interpret the Lease. Moreover, analysis of all the dispute resolution provisions in the Lease shows that it is unlikely the Lease's drafters intended to give appraisers *broader*

---

[1] On May 9, 2019, this court ruled that the trial court's order is appealable as an order denying in part a motion to compel arbitration.

powers to interpret the Lease than they gave to other arbitrators. We therefore affirm.

## BACKGROUND

### 1. The Lease

#### a. *Basic terms*

The Lease concerns property located in Woodland Hills. The Lease was originally executed in August 1979 and was later amended several times.

The original term of the Lease was from August 24, 1979, to December 31, 2054. The termination date was later extended to December 31, 2074. Douglas Emmett is the current owner of the Land and the landlord under the Lease. I&G is the current tenant.

Under the original Lease terms, rent was fixed for the first 25 years. After 25 years, and each 25 years thereafter on the "Reappraisal Date," rent was subject to increase to "an annual sum equal to 9% of the fair market value of the Demised Premises."[2] Fair market value was to be determined "as if the Demised Premises were vacant, unimproved, unencumbered and free of this Lease, but subject to the restrictions on use set forth in Article VIII of this Lease, as of the applicable Reappraisal Date."

Article VIII, entitled, "Use of Property," contains two provisions. One provision contained in section 8.02 requires that the tenant: (1) generally comply with applicable laws and regulations; (2) use the property only for lawful purposes; and (3) avoid any nuisance. The other provision contained in section

---

[2] The Lease defines the "Demised Premises" as the land identified in a formal parcel description (the Land).

3

8.01 states that "Tenant may use the Property for general office use, commercial use, and all related or ancillary uses."

Subsequent Lease amendments changed the Reappraisal Dates and added some other rent recalculation provisions. However, the method for periodic recalculation of the rent based on 9 percent of the fair market value of the Land remained the same.

### b. *The appraisal procedure*

The Lease provides that, if the parties are not able to agree on the fair market value of the Land within three months after the Reappraisal Date, the parties must resort to an appraisal process described in article XXI of the Lease.[3] Section 21.02 in article XXI addresses the appraisal process.

Under that process, each party has the right to appoint as an appraiser a "disinterested person who is a Member of the American Institute of Real Estate Appraisers (or if such Institute is not in existence at the time in question, a member of a similar or successor organization) (an 'M.A.I.') and whose office is located in the County of Los Angeles."[4] The appointed Appraisers are to appoint a similarly qualified third Appraiser, and the three "shall

---

[3] Article XXI is entitled, "Arbitration and Appraisal." The Third Amendment to the Lease, which was executed in 1998 and contains the current operative terms for the rent recalculation procedure, states that the appraisal shall be conducted "in accordance with Article XIX of the Lease." As I&G points out, this appears to be a typographical error, as article XIX addresses "Mortgages, Assignments and Subleases" rather than appraisals.

[4] We use the capitalized term "Appraiser" to refer to the appraisers specifically identified in section 21.02.

4

as promptly as possible" determine the fair market value of the Land.

In the event the two appointed Appraisers cannot agree on a third Appraiser, and if the parties also cannot agree on a third Appraiser, either party may give notice to the other party and "apply for such appointment to the Superior Court for the County of Los Angeles."

During the appraisal, each party is "entitled to present evidence and argument to the [A]ppraisers and to be represented by counsel." The Appraisers' determination "shall be conclusive upon the parties and judgment upon the same may be entered in any court having jurisdiction thereof." The Appraisers are to "give written notice to the parties stating their determination, and shall furnish to each party a copy of such determination signed by them." Each party is responsible for the fees of the Appraiser that it appoints, and the "fees and expenses of the third [A]ppraiser shall be shared equally by both parties."

### c.    *Arbitration of other disputes*

Section 21.01 of article XXI addresses resolution of disputes that the parties elsewhere in the Lease "specifically and expressly agreed" to arbitrate. Section 21.01 provides that such disputes "shall be settled by arbitration in the City of Los Angeles in accordance with the Commercial Arbitration Rules then obtaining of the American Arbitration Association [AAA], and judgment upon the award rendered in such arbitration may be entered in any court having jurisdiction thereof." Section 21.01

5

further requires that "at least one arbitrator shall be an attorney at law, admitted to practice in the State of California."[5]

Disputes that the parties agreed to arbitrate include: (1) whether the amount of insurance the tenant maintains is "inadequate properly to protect the interest of Landlord"; (2) whether the tenant's replacement or reconstruction of improvements on the Land constitutes a "fair and reasonable economic utilization of the Demised Premises"; and (3) whether improvements on the Land have been "substantially damaged or destroyed" within the last five years of the Lease, permitting early termination of the Lease.

### d. *Limitation on the authority of "arbitrators"*

Article XXI of the Lease includes a third section, section 21.03, which imposes limitations on the authority of "arbitrators." It reads in full: "The arbitrator or arbitrators or appraiser or appraisers may not change any of the terms of this Lease or deprive any party to this Lease of any right or remedy expressly or impliedly reserved in this Lease and *such arbitrators* shall be limited to the determination of the facts presented, and shall not have authority to interpret this Lease or any applicable law." (Italics added.)

## 2. Proceedings in the Trial Court

### a. *Douglas Emmett's complaint*

The parties to the Lease were able to reach agreement on the fair market value of the Land for purposes of recalculating

---

[5] For clarity, we refer to such arbitrators as "AAA Arbitrators" to distinguish them from Appraisers under the Lease.

6

the rent in 1994 and 1998. As amended, the Lease next required a rent recalculation on January 1, 2018.

Douglas Emmett and I&G were unable to agree on the fair market value of the Land for purposes of the 2018 rent recalculation. Consequently, they each appointed an Appraiser under section 21.02 of the Lease. Neither those two Appraisers nor the parties themselves were then able to agree on a third Appraiser.

On June 4, 2018, Douglas Emmett filed a complaint seeking a court order appointing a third Appraiser pursuant to section 21.02(b) of the Lease.

### b. *I&G's cross-complaint*

I&G answered and filed a cross-complaint. I&G's cross-complaint alleged that the parties disagreed concerning the method for determining the fair market value of the Land for purposes of recalculating rent. I&G claimed that the Lease requires fair market value to be determined in light of the provision in article VIII that the Land be used for "office use, commercial use, and all related or ancillary uses." I&G claimed that, in contrast, Douglas Emmett contends that the parties' appraisers "may consider 'residential' purposes for determining fair market value."

The cross-complaint further alleged that the Lease "is clear that neither an arbitrator nor an appraiser have authority to interpret the language of the . . . Lease or applicable law," and that the appraisers therefore "do not currently have sufficient information or guidelines to perform their duties." The cross-complaint sought declaratory relief identifying the proper manner to determine fair market value under the Lease, and

7

requested an injunction prohibiting the appraisal from proceeding until the court decided that issue.

### c. *Douglas Emmett's motion for the court to appoint an Appraiser*

Douglas Emmett moved to appoint an Appraiser, arguing that the Appraisers, not the court, should interpret the Lease as necessary to determine the current fair market value of the Land. Douglas Emmett argued that section 21.03 of the Lease provides that only "arbitrators" are precluded from interpreting the Lease. Douglas Emmett claimed that the Appraisers are not "arbitrators" for purposes of this limitation because the Lease distinguishes between "appraisers" who determine the fair market value of the Land and "arbitrators" who decide other disputes. Douglas Emmett also argued that, even if the court were to determine that it must interpret the Lease, I&G's interpretation was wrong as a matter of law.

Consistent with its cross-complaint, I&G responded to Douglas Emmett's motion by arguing that the appraisal should be stayed pending a ruling by the trial court on how fair market value should be determined.

The trial court granted Douglas Emmett's motion to appoint the Appraiser and denied I&G's request that the appraisal be stayed pending resolution of its cross-complaint. However, with respect to the scope of the Appraiser's authority, the court found that I&G's interpretation of section 21.03 was correct. Citing *Jefferson Ins. Co. v. Superior Court of Alameda County* (1970) 3 Cal.3d 398 (*Jefferson*), the trial court concluded that "[i]t is not logical that the parties intended an appraiser to have more authority than an arbitrator."

8

The court also stated that it "agree[d] with [I&G's] position that the fair market value for purposes of the reappraisal is to be based upon a valuation of the property as if it were vacant, unimproved, unencumbered and free of the Lease, for general office use, commercial use, and all related or ancillary uses, *which does not include residential use*." (Italics added.)

Douglas Emmett then filed a motion to correct the court's order, arguing that the court's ruling on the meaning of "fair market value" under section 21.02 was premature. In response, the court confirmed that the portion of its written order purporting to interpret the meaning of fair market value for purposes of the appraisal was only "context for the court's ruling" and was not intended to be a decision on I&G's cross-complaint for declaratory relief.

## DISCUSSION

### 1. Standard of Review and Governing Law

The only issue on this appeal is the scope of the Appraisers' authority to interpret the Lease. Neither party provided any parol evidence in the trial court bearing on that issue. Thus, we must decide the issue based solely on the language of the Lease and the relevant law. Our review is therefore de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [appellate court independently determines the meaning of a contract where there is no conflicting extrinsic evidence]; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191[appellate court reviews legal issues de novo].)

We interpret the Lease's dispute resolution provisions as we would any other contract. (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 (*Rice*) [ordinary contract interpretation rules apply to arbitration agreements].) We attempt to give effect

9

to the parties' intentions in light of the contractual language and the circumstances under which the contract was made. (*Ibid.;* Civ. Code, §§ 1636, 1647.) And we interpret the contract as a whole, "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

## 2. The Appraisal Process Under the Lease Is a Form of Arbitration

The parties agree that the appraisal procedure described in section 21.02 of the Lease is a form of arbitration. Under Code of Civil Procedure section 1280, subdivision (a), an " 'Agreement' " for purposes of the arbitration statutes includes "agreements providing for valuations, *appraisals*, and similar proceedings."[6] (Italics added; see *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1093 (*Doan*) [citing section 1280, subdivision (a) in concluding that "[a]n appraisal provision in an insurance policy constitutes an agreement for contractual arbitration"].)

The Appraisers who decide the fair market value of the Land under the dispute resolution provisions of the Lease also *function* as arbitrators. They consider evidence; they hear argument from the parties' counsel; and they issue a written decision.

The parties draw different conclusions from this status of the Appraisers as arbitrators. Douglas Emmett argues that because appraisal under the Lease is a form of arbitration, the Appraisers are presumed to have the power to interpret the Lease as necessary for their decision. (See *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*).) On the

---

[6] Subsequent undesignated statutory references are to the Code of Civil Procedure.

other hand, I&G argues that if the Appraisers are arbitrators under the Lease, they are necessarily included within the definition of "arbitrators" who are explicitly *not* permitted to interpret the Lease under section 21.03.

Neither of the parties' arguments is based on a legal rule that authoritatively establishes whether the Appraisers are permitted to interpret the Lease. Rather, both arguments simply identify principles of interpretation that can be brought to bear to understand the parties' intent.

In *Gueyffier,* our Supreme Court explained that "[w]hen parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision." (*Gueyffier, supra,* 43 Cal.4th at p. 1184.) However, an exception to this "general rule" "arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers." (*Id.* at p. 1185.) That is because " '[t]he powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.' " (*Ibid.,* quoting *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375.)

Here, the Lease's drafters explicitly and unambiguously limited the power of *some* decision makers to interpret the Lease. The drafters' clear directive in section 21.03 that "such arbitrators . . . shall not have authority to interpret this Lease or any applicable law" leaves no doubt that the parties intended to withhold from "arbitrators" the authority to interpret the Lease. (See *Gueyffier, supra,* 43 Cal.4th at p. 1184.) The issue is what

11

persons the parties intended to include in the class of "such arbitrators" who may not interpret the Lease.

Thus, section 21.03 rebuts the otherwise applicable presumption that "arbitrators" have the power to interpret the Lease. Determining who is included in this class of "arbitrators" requires textual interpretation, not reliance on a presumption that the Lease's drafters expressly rejected.

The conclusion that I&G seeks to draw from the Appraisers' status as arbitrators also relies upon a general legal principle that, while informative, is not dispositive. As mentioned, I&G argues that because the law categorizes appraisals as arbitrations, the Appraisers must be included in the category of "such arbitrators" who are not permitted to interpret the Lease. But that is true only if the parties intended to import the *legal* meaning of "arbitrators" into the phrase "such arbitrators."

As I&G points out, the parties to a contract are "presumed to have had existing law in mind when they executed their agreement." (*Swenson v. File* (1970) 3 Cal.3d 389, 394.) Thus, for example, parties to a contract are presumed to know and to incorporate legal rules that affect the scope of their obligations under the contract. (See *id.* at pp. 394–395 [former partners were presumed to have drafted a noncompetition agreement in light of the then-existing permissible legal scope of such an agreement].)

Here, however, the law did not dictate what authority the parties were permitted to give to the Appraisers. The parties *could* have chosen to give the Appraisers the authority to interpret the Lease while denying that same authority to the AAA Arbitrators. To that end, despite the fact that the law includes appraisals within the definition of arbitrations, the

12

parties could have assigned a meaning to the term "arbitrators" in section 21.03 that excluded Appraisers. (See Civ. Code, § 1644 [words of a contract should be understood in the "ordinary and popular sense, rather than according to their strict legal meaning" and parties may give words a "special meaning" through usage].) The question is whether the parties intended to do so.

To answer that question, we must look to the language of section 21.03 and the Lease as a whole to discern the drafters' intent.

3. **Interpreted in Light of the Lease as a Whole, "Such Arbitrators" in Section 21.03 Includes "Appraisers"**

While not dispositive, the legal status of appraisers as arbitrators is *relevant* to interpreting the drafters' intent. Because appraisals are included within the legal definition of arbitrations, and because the Appraisers actually perform the function of arbitrators under the Lease, it is reasonable to infer that the drafters intended the term "such arbitrators" to include Appraisers.

Consideration of the Lease as a whole strengthens that inference. The dispute resolution provisions of the Lease do not provide any reason to believe that the drafters intended to distinguish between Appraisers and the AAA Arbitrators with respect to their authority to interpret the Lease. (See *Rice, supra,* 248 Cal.App.4th at p. 186 [" ' "A court must view the language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach' " ' "], quoting *City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71.)

13

The nature of the disputes that AAA Arbitrators decide under the Lease suggests that those disputes are as likely as appraisals to require interpretation of the Lease and the law. For example, under section 15.02 of the Lease, AAA Arbitrators must decide disputes concerning the value of a tenant's improvements. Such a decision requires determining whether improvements to the Land that a tenant proposes have an estimated cost "of not less than the then fair market value of the then existing Improvements" and are "of such type, size, design, quality of construction and general character as to provide . . . a fair and reasonable economic utilization of the Demised Premises."

Determining the "fair market value" of the existing improvements and defining the "fair and reasonable economic utilization" of the Land could involve interpretation of the parties' rights and expectations under the Lease and the law. That determination could conceivably even involve the Lease's requirements for how the tenant may use the Land—the very dispute at issue here.

Similarly, under section 6.09 of the Lease, in case of dispute, AAA Arbitrators must decide whether the insurance provided by a tenant is "inadequate properly to protect the interest of Landlord." A dispute over that issue would necessarily involve consideration of the Landlord's interests under the Lease, which could require interpretation of the Lease or application of the relevant law.

Finally, under section 16.04, AAA Arbitrators must decide any dispute arising from damage to the tenant's improvements within the last five years of the Lease to determine whether the tenant may request early termination of the Lease. Such a

14

dispute might involve determining whether damage to the tenants' improvements resulted from an "act of God" or was otherwise outside the "reasonable control" of the tenant.  It might also involve determining whether the tenants' improvements were "substantially damaged or destroyed."  Such determinations could require analyzing the applicable law, or at least applying the law to the facts.

In fact, to the degree that the Lease distinguishes between the respective roles of AAA Arbitrators and Appraisers, their respective roles suggest that the parties would have been *more* likely to expect AAA Arbitrators to interpret the Lease and the law.  The Lease does not require that Appraisers have any particular legal background or training.  It specifies only that Appraisers must be members of the American Institute of Real Estate Appraisers (or members of an equivalent or successor organization).  In contrast, the Lease requires that at least one AAA Arbitrator be "an attorney at law, admitted to practice in the State of California."  The requirement that AAA Arbitrators must include at least one lawyer suggests that the parties expected those arbitrators to be involved in resolving disputes requiring some knowledge of the law.

Thus, a conclusion that section 21.03 deprives AAA Arbitrators but not Appraisers the authority to interpret the Lease cannot be supported by any substantive analysis of those persons' roles.  Rather, such a conclusion, if viable, must derive from the language of the section itself.

The language of section 21.03 does not support that conclusion in light of the other provisions of the Lease.  The language is certainly ambiguous.  The term "such arbitrators" could refer specifically to the "arbitrator or arbitrators" identified

15

in the previous independent clause, or it could refer to the entire phrase "arbitrator or arbitrators or appraiser or appraisers." No dispositive textual analysis of section 21.03 can resolve that ambiguity.

Douglas Emmett contends that rules of construction require us to interpret the term "such arbitrators" in section 21.03 as referring only to the specifically identified "arbitrators" in the preceding clause of the sentence rather than to the entire group of "arbitrator or arbitrators or appraiser or appraisers." Citing *Rice*, *supra*, 248 Cal.App.4th 175, Douglas Emmett argues that when parties to a contract use particular language in one portion of a contract (i.e., "arbitrator or arbitrators or appraiser or appraisers") and use different language in another portion of the contract (i.e., "such arbitrators"), the choice to use different language has meaning.

That principle makes sense when parties to a contract would be expected to use the same language in different portions of the contract if they intended the same meaning. For example, in *Rice,* the parties used expansive language in describing the scope of jurisdiction to decide disputes and narrower language in describing the scope of controversies they intended to arbitrate. The court concluded that the parties "could easily have copied and pasted the broader text from the jurisdiction clause to the arbitration clause, but chose not to do so." (*Rice, supra,* 248 Cal.App.4th at p. 188.)

Here, however, one would not necessarily expect the drafters of the Lease to use exactly the same language in the first and second clauses of the sentence comprising section 21.03 if they intended the same meaning. The second clause is not free-standing, but clearly intends to import meaning from the first.

16

The question is simply what meaning the drafters intended to incorporate by reference.

The term that the parties selected for the second clause of the sentence—"such arbitrators"—refers back to some or all of the persons described in the prior phrase "arbitrator or arbitrators or appraiser or appraisers." The parties *could* have simply copied and pasted that entire phrase into the second clause of the sentence if they intended to refer to the prior phrase as a whole. However, it was also natural for them to use a simpler, summary term to refer to the persons that they had just named. For example, if the drafters had simply said "such decision makers" rather than "such arbitrators," the phrase would have been unremarkable and unambiguous in referring to all the persons they had just identified. Arbitrators and appraisers are both decision makers under the Lease. The fact that the drafters chose an ambiguous term to refer to a concept they had just identified does not mean they intended a different meaning.

To resolve this ambiguity, one must again refer to the Lease as a whole. In light of the respective roles of Appraisers and AAA Arbitrators under the Lease, it seems improbable that the parties would have drawn such a crucial distinction between the two classes of arbitrators concerning their authority to interpret the Lease without some clearer description of their intent to do so.

That improbability is highlighted by the fact that, in referring specifically to the "arbitrator or arbitrators or appraiser or appraisers" in the first clause of the sentence comprising section 21.03, the drafters clearly precluded both the AAA Arbitrators and the Appraisers from "chang[ing] any of the terms

17

of this Lease or depriv[ing] any party to this Lease of any right or remedy expressly or impliedly reserved in this Lease." Interpretation of a contract and depriving a party of a right under the contract are different concepts. (See *Gueyffier, supra,* 43 Cal.4th at pp. 1185–1186 [arbitrator did not change the terms of a contract by interpreting it to permit the equitable defense of futility to excuse a party's failure to provide the contractually required notice of breach].) However, the concepts are related. If the drafters had intended to deprive AAA Arbitrators of the authority to change *or* interpret the Lease, but to deprive Appraisers only of the authority to *change* the Lease, the drafters would likely have made such a subtle and specific distinction explicit.

The lack of an explicit statement that Appraisers have the authority to interpret the Lease while AAA Arbitrators do not have such authority is also telling in light of the traditional role of appraisers. As the trial court noted, our Supreme Court has explained that appraisers generally have *less* authority than arbitrators. In *Jefferson* the court observed that "[a]lthough *arbitrators* are frequently, by the terms of the agreement providing for arbitration . . . given broad powers . . . , *appraisers* generally have more limited powers." (*Jefferson, supra,* 3 Cal.3d at p. 403.) The court explained that the function of appraisers is to determine " 'the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.' " (*Ibid.*) In light of this generally more limited role, one would not expect the Lease's drafters to give Appraisers

18

greater interpretive authority than the AAA Arbitrators, at least not without saying so directly.**7**

Douglas Emmett also argues that depriving Appraisers of the ability to interpret the Lease would be inconsistent with the summary nature of arbitrations and would contradict the parties' direction that the Appraisers, once appointed, "shall as promptly as possible" determine the fair market value of the Land. Citing *Helzel v. Superior Court* (1981) 123 Cal.App.3d 652 (*Helzel*), Douglas Emmett contends that by urging this interpretation, I&G's declaratory relief claim has unduly delayed the appraisal.

---

**7** Douglas Emmett correctly points out that *Jefferson* and its progeny specifically concern the role of appraisers in the context of insurance contracts. (See *Jefferson, supra,* 3 Cal.3d at p. 403; *Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 58–59 [role of appraiser under Insurance Code section 2071 is limited to appraising loss and does not include the power to interpret the insurance contract]; *Doan, supra,* 195 Cal.App.4th at pp. 1093–1094 [considering the nature of insurance appraisals].) However, the role of appraisers in the insurance context is consistent with the ordinary understanding of what it means to "appraise," which is to "estimate the monetary value of [or] determine the worth of" something. (<https://www.dictionary.com/browse/appraiser?s=t> [as of Aug. 12, 2020], archived at <https://perma.cc/D5QW-QVGF>.) The point is not that the law precluded the Lease's drafters from providing Appraisers with the authority to interpret the Lease; as discussed above, the parties were free to give the Appraisers that authority if they chose to do so. The point is that the ordinary understanding of the role of an appraiser makes it unlikely that the drafters of the Lease would have given the Appraisers *greater* powers to adjudicate disputes than they gave the AAA Arbitrators without explicitly stating that intention.

19

In *Helzel*, the parties to a stock purchase agreement agreed to a two-phased appraisal of the stock. (*Helzel, supra,* 123 Cal.App.3d at pp. 656–657.) The first phase involved two separate appraisals. If the disparity between the two appraisals was sufficient, the parties agreed that a third appraiser would be appointed in the second phase. (*Ibid.*) One of the parties filed a petition to compel arbitration seeking the appointment of a third appraiser after the two initial appraisals revealed a significant disparity. The other party responded with a declaratory relief claim seeking to delay the appraisal/arbitration pending judicial determination of the propriety of the first two appraisals. (*Ibid.*)

The appellate court held that the arbitration should proceed. (*Helzel, supra,* 123 Cal.App.3d at pp. 660–661.) The court concluded that there was no statutory or contractual basis to delay the arbitration pending judicial resolution of challenges to the initial phase of appraisals. (*Id.* at pp. 660–664.)

The holding in *Helzel* is not directly relevant here. Douglas Emmett complains that I&G sought to use its declaratory relief claim to delay the appraisal, but the trial court *denied* I&G's request to stay the appraisal pending resolution of its cross-complaint. The trial court simply ruled that in conducting that Appraisal, the Appraisers are not permitted to interpret the Lease.[8]

However, Douglas Emmett's broader point is that the parties to the Lease, like the parties in *Helzel*, would not have

---

[8] The propriety of I&G's cross-complaint is not before us. This appeal concerns only the portion of the trial court's order denying Douglas Emmett's request to arbitrate the issue of the meaning of fair market value under section 21.02 of the Lease.

20

contemplated an inefficient "piecemeal procedure" to resolve disputes. (See *Helzel, supra,* 123 Cal.App.3d at p. 664.) Douglas Emmett argues that the Lease's drafters must have intended to give Appraisers the authority to interpret the Lease because otherwise a dispute over interpretation would lead to two stages of judicial review—one to obtain judicial direction before the Appraisal and one to obtain judicial confirmation after.

This argument is too speculative to support the conclusion that the parties must have intended to give Appraisers the authority to interpret the Lease. The parties who originally drafted the Lease might have understood its terms better than the current parties and might not have anticipated that any disputes concerning interpretation would affect the appraisal (such as the disagreement over the interpretation of "fair market value" that divides the parties now). Nor did the drafters necessarily assume that such a dispute would lead to piecemeal judicial review. The drafters might have expected that the appraisal could proceed subject to subsequent judicial resolution of disputes over interpretation. Appraisers could, for example, identify separate or alternative values for the Land depending upon the result of subsequent litigation over disputed interpretation issues.[9]

---

[9] In the analogous context of insurance appraisals (where appraisers have no authority to interpret the underlying insurance policies), some courts have approved the process of an appraisal leading to a judgment that merely confirms the value of all claimed losses subject to subsequent litigation over coverage issues. (See *Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange* (2008) 162 Cal.App.4th 1498; *Lee v. California*

Thus, we do not know whether the drafters believed that limiting the Appraisers' authority to interpret the Lease would lead to delay in the Appraisal process. However, we *do* know that the drafters specifically denied the authority to interpret the Lease to "arbitrators." To the degree the drafters were concerned about the possibility of delay, that concern clearly did not affect their decision to deny interpretive authority at least to the AAA Arbitrators. The drafters' clear directive that "arbitrators" may not interpret the Lease overrides any assumption that the parties valued the speed and efficiency of arbitration over their interest in reserving questions of interpretation for the court. The drafters' expressed desire that appraisals proceed "as promptly as possible" therefore does not compel the conclusion that the parties intended to provide Appraisers with the authority to interpret the Lease.

---

*Capital Ins. Co.* (2015) 237 Cal.App.4th 1154, 1169 ["A *Devonwood* itemization permits an appraisal panel to fulfill its obligation to assign loss values to damages items without exceeding its authority . . . . The parties are free to dispute the insurer's liability to pay for disputed categories of loss in subsequent litigation"].)

## DISPOSITION

The trial court's order is affirmed.  I&G is entitled to its costs on appeal.

NOT TO BE PUBLISHED.



LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.